PEOPLE EX REL. ROGERS ET AL. V. GREEN ET AL. (First Case.)

PEOPLE EX REL. NEWTON V. ROGERS ET AL. (Second Case.)

1. An attorney is liable to be removed from office by this court for sufficient reason and on proper showing. This reason and this showing are not necessarily limited to criminal offenses, or to an act which would create a civil liability.

2. Neither the letter nor the spirit of the attorney's privilege permits him to enter our courts and spread upon the judicial records charges of a shocking and felonious character against brother attorneys, and against judges engaged in the administration of justice, upon mere rumors coupled with facts which should of themselves create no suspicion of official-corruption in a just and fair mind.

DISBARMENT proceedings.   On rehearing.

On the 16th of June, 1886, Lucius P. Marsh and Merrick A. Rogers filed in this court their petition for a rule upon Thomas A. Green and Horace B. Johnson to show cause why they should not be disbarred.   Their petition alleges that on the 17th day of May, A. D. 1886, the said Green and Johnson "filed, and procured and caused to be filed, in the office of the clerk of the circuit court of the United States within and for the district and state of Colorado, sitting at Denver, a certain bill or complaint in chancery, wherein Almon P. Newton and Isabel J. Newton, his wife, are complainants, and Edward F. Lamb and Vira Lamb, J. Jay Joslin, and the Arapahoe Cattle & Land Company are defendants, which said bill of complaint is signed by the said Thomas A. Green and the said Horace B. Johnson, by their own proper hands, as the said complainants' solicitors therein;　*　*　*　that in and by the said bill of complaint the said Thomas A. Green and the said Horace B. Johnson falsely, wickedly and maliciously charge and allege that your petitioner Lucius P. Marsh bribed your petitioner Merrick A. Rogers, as judge as aforesaid of the said superior court, to render a certain judgment in the said bill of complaint

mentioned, and that your petitioner Merrick A Rogers, as judge as aforesaid, accepted and received such bribe, and that he, your petitioner Merrick A. Rogers, was thereby bribed and corrupted, which said false, wicked and malicious charges of bribery and corruption your petitioners humbly crave the leave of this honorable court that they, your petitioners, be not required to more specifically and certainly set out and charge herein, but that, for greater certainty in this behalf, your petitioners have the permission of this honorable court to refer to the said bill of complaint; * * * that the said Thomas A. Green and the said Horace B. Johnson, in and by the said bill of complaint, further charge and allege that your petitioner Lucius P. Marsh, on the next day after the rendition of the said judgment, in a discourse which your petitioner Lucius P. Marsh is alleged to have had with an unnamed non-resident of the said state of Colorado, stated and told to said non-resident that he, the said non-resident, had no idea how cheap judges could be bought and bribed in Colorado; that your petitioner Lucius P. Marsh urged him, the said non-resident, to let him, the said Lucius P. Marsh, commence a certain suit then contemplated by the said non-resident in a state court, where he could bribe a judge who would do anything at all he, the said Lucius P. Marsh, wanted him, the said judge, to do; that, in and by the said bill of complaint, the said Thomas A. Green and the said Horace B. Johnson further allege that the said Lucius P. Marsh, a day or two thereafter, attempted to explain said matter to the said non-resident, and told him, the said non-resident, that he, the said Lucius P. Marsh, did not mean judges in Colorado outside of Denver, but that he, the said Lucius P. Marsh, meant judges in Denver, and meant the judge of the superior court of Denver, and that the said Lucius P. Marsh gave said non-resident to distinctly understand that he, the said Lucius P. Marsh, could bribe said judge of said superior court very cheaply, and had

done so in the said suit in said bill of complaint mentioned and described."

The bill filed in the circuit court, which is made a part of the petition of the relators, seeks relief touching an alleged fraud perpetrated by Joslin and Lamb upon the complainants. This alleged fraud had already been the subject-matter of litigation in the superior court before Judge Rogers, who had rendered a decision therein in favor of the defendant Joslin. Anticipating that this judgment in the superior court would be pleaded as a former adjudication in bar of the action in the circuit court, the complainants seek to impeach it in their bill by allegations that it was obtained by bribery and fraud. The allegations of the bill upon this point are as follows:

"Your oratrix further shows to this honorable court that the only shadow or pretense of defense that said Joslin or said Lamb have to this suit is a certain fraudulent and corrupt judgment obtained by said Joslin against your oratrix in the superior court of the city of Denver, on or about the 7th day of April, 1886. That said action was commenced in said court by your oratrix against the said defendant, J. Jay Joslin, alone for damages for the breach of warranty in regard to the price and quality of said dry goods above mentioned, and was purely a technical legal action, as your oratrix is informed and believes, and not against the other defendants to this bill, and that said court had no jurisdiction to grant the relief sought in the suit. That when said action came on for trial, the whole matter of both law and fact was submitted to the judge of said court for trial, and no jury demanded by either party. That upon said trial your oratrix offered evidence to prove all of the facts substantially as alleged above in this bill in regard to the warranty of said goods, and that said Joslin could not successfully contradict or deny any of the substantial facts connected with said implied or expressed warranty as alleged above, but was compelled to admit, under oath, that he had put up said

goods himself from the old, faded, worthless goods of his said store in Denver, and had made out said false invoices, and had placed the prices on the same at the highest real price of said goods when the same were fresh and in fashion, and had secretly shipped said goods, after he had boxed up the same, to said public warehouse in the city of Denver, and had furnished said Lamb with said invoices and said goods to enable him to obtain your oratrix's property in the manner aforesaid; and, after said Joslin was compelled to admit, under oath, that the goods mentioned in said invoices were only worth thirty-three and one third per cent. of the said invoice prices, and that he had intentionally made out said false and fraudulent invoices, and put up and stored said goods in said public warehouse to accomplish the obtaining of the title to your oratrix's said large and valuable ranch and real estate, the same being situated, as aforesaid, only about six miles east of Denver, and well improved, and all under the Highline ditch, and that he had sold the same and realized $14,000 in money for it, in addition to the $6,000 incumbrances, and in all $20,000 cash, or its full equivalent; and, after your oratrix had introduced in evidence the above written memorandum prepared by Joslin's own attorney, and wholly in his interest, and in which it is confessed in writing, and was so confessed and stated at the time they obtained said deed from your oratrix, and to induce your oratrix to execute and deliver said deed, that your oratrix was to have $9,000 in money, and when it was agreed and understood by all that said dry goods were to be the same as money, and equivalent to $9,000 in money; and notwithstanding all of these admissions, confessions and facts were fully presented to the judge of said court, and that Joslin admitted he had only delivered in all $3,000 worth of goods to your oratrix, instead of $9,000, and had wronged your oratrix, as above stated, out of $6,000, that the judge of said court, to the utter astonishment of your oratrix and her

attorneys, and all persons present, except said Joslin and
his attorneys, cut off the whole argument of the attor-
neys in said case except a brief opening, and, in an ex-
cited and frantic manner, more like a maniac than a cool,
deliberate and impartial judge, declared that, in his view
of said case, the same was an afterthought, and that no
warranty or cause of action was made out against Joslin
for breach of warranty, either express or implied, and
that he would find for the defendant; and that the only
reason and pitiful excuse offered by the said judge was
that if there had been anything wrong about said trans-
action, that Mrs. Newton, your oratrix, would have
rushed immediately to a lawyer and commenced a suit
against said Lamb, who was shown to be wholly insolv-
ent, or against said Lamb and his wife, to recover back
said real estate, when it was shown by records and ad-
mitted that it was only eleven days from the day your
oratrix deeded said property to Vira Lamb until she con-
veyed the same to Joslin, who was not then known in
said transaction at all to your oratrix; and when it was
admitted that your oratrix executed said deed late on a
Saturday evening, and that said goods were not delivered
to her until the first of the following week, and it was
also shown in evidence that at that time your oratrix had
a very sick child and a sick husband, and that during the
very few days from the delivery of said goods until said
Vira L. Lamb had conveyed said ranch to said Joslin, in
pursuance of said conspiracy to defraud your oratrix out
of the same, your oratrix only had time to make a hasty
and imperfect examination of said goods, and take care
of her sick family, and had no time to run to a lawyer to
commence law-suits against parties who were wholly in-
solvent and worthless, or to commence a suit to recover
back her property when she supposed it had passed into
the hands of a *bona fide* purchaser in good faith, and was
lost to your oratrix forever.

" Your oratrix states, on information and belief, that

the statutes of limitation of this state give her three years in which to commence a suit for relief against said fraud instead of eleven days, and six years in which to commence action for breach of warranty; but that said false, absurd and pitiful excuse was the best reason said judge could give for rendering his said grossly unjust, oppressive and corrupt decision and judgment, as hereinafter fully set forth. That said decision was so grossly unjust as to shock the moral sense of all present, except those who had corrupted said judge as hereinafter fully alleged and set forth. That during said trial, which lasted over two days, the said judge acted in a very strange, excited, frantic and partial manner, often growing pale, angry, and even frantic upon the bench towards your oratrix's attorneys when they were in the most quiet, polite and respectful manner presenting her case to said court; and when your oratrix was called to the witness stand, and said judge was administering the oath to her, she made an innocent mistake in thinking the oath was over, and let down her hand, whereupon said judge screamed at her in such an angry and threatening manner that your oratrix was rendered so nervous and so much confused that she was scarcely able to testify, and did not recover from the shock for several days thereafter; and your oratrix charges that said judge acted towards her in an insulting, cruel and brutal manner, for the purpose and with the intention of intimidating, confusing and bewildering her so she could not properly testify in her own behalf on said trial. That the conduct of said judge, during most of said trial, was more like that of a maniac than a calm, deliberate, honest and impartial judge of a court.

"Your oratrix states that upon the undisputed facts of said case, and upon the sworn statement of said Joslin himself, your oratrix was entitled to a judgment for $6,000; with ten per cent. interest from the 15th day of November, 1883, and amounting in the aggregate to at

least $7,500; and your oratrix further states on information and belief that said judgment rendered against your oratrix was so grossly and manifestly wrong and unjust, and so clearly against every principle of law and justice, as to shock the reason and moral sense of every fair-minded person and force the conclusion that the judge of said court was bribed or corrupted in some manner by said Joslin to render such a judgment against your oratrix. Your oratrix therefore charges, on information and belief, that said Joslin obtained said judgment against her by a combination of fraud, bribery, corruption, perjury and subornation of perjury, as hereinafter set forth, to wit:

" Your oratrix charges, on information and belief, that in addition to the grossly improper and partial conduct of said judge above alleged, that during said trial, and when said judge was sitting to try the same as a jury, that he was frequently found secretly and closely closeted with one Lucius P. Marsh, who was the leading attorney for said Joslin on said trial; and that one day during said trial said judge and said Marsh were closeted in the private chambers of said judge from the time said court adjourned at 12 o'clock until 2 o'clock P. M., when said court was again called, and that said judge was found on the most intimate relations with said Marsh throughout said whole trial; and that another time when said case was also on trial in said court, and said judge was unexpectedly absent and missed from said courthouse, when he was needed in court, the deputy sheriff was sent in search of said judge, and finally found him closeted with said Marsh in the law-office of said Marsh, in Lawrence street, in the city of Denver.

" Your oratrix states, on information and belief, that when jurors are called upon to try questions of fact in our courts, that they are always specially charged not to talk or converse with any persons in regard to such trial, and especially not to talk with any of the parties to such

suit, or with the attorneys of either side; and your oratrix charges, on information and belief, that for a juror to be thus caught closeted with one of the attorneys in an action while the same was on trial, and following an attorney engaged in such case to his office, and to be closely and secretly closeted with such attorney, that such conduct on the part of a juror would be so grossly improper, and so suspicious of corruption and bribery, that any verdict said juror might render in favor of the party represented by such attorney would be set aside at once; and your oratrix charges, on information and belief, that it is just as improper and as strongly suspicious conduct on the part of a judge to do so when sitting to try a case both as judge and jury; and your oratrix charges, on information and belief, that such grossly improper and suspicious conduct on the part of a judge is even much worse and much more suspicious than such conduct on the part of a juror.

"That the next day after said judge had rendered said unjust and corrupt judgment against your oratrix, a non-resident or citizen of another state, who was about to commence an important suit in the United States circuit court for the district of Colorado, and who had employed other attorneys to commence and conduct said suit in this honorable court, went to said Marsh to retain him to assist in said suit he was about to commence in this court, and to consult with said Marsh touching the matter, whereupon said Marsh told him that he had no idea how cheap judges could be bought and bribed in the state of Colorado, and not only advised him not to commence said suit in the United States circuit court for the district of this state, but urged him to let him (Marsh) commence his suit in a state court, where he could bribe a judge who would do anything at all he wanted him to do. That, when said non-resident informed his first attorneys of what Marsh had said, the said attorneys said any lawyer who would give bribes, or in any manner ad-

vise the giving of a bribe, was a scoundrel and a disgrace to his profession, and that they would not go into any case with such a man. That a day or two afterwards said Marsh attempted to explain said matter to said non-resident, and told him he did not mean judges in Colorado outside of Denver, but that he meant judges in Denver, and meant the judge of the superior court of Denver, and gave said non-resident distinctly to understand that he could bribe said judge of said superior court very cheaply, and had done so in your oratrix's said suit, and that he could corrupt said judge at any time with a very small sum of money to do anything he wanted him to do in any suit he might have before said judge, and that it would be a great advantage in such an important suit. Your oratrix states, on information and belief, that said Marsh referred said non-resident to your oratrix's case to show said non-resident what he could accomplish by the bribery of said judge of the said superior court to induce said non-resident to commence his suit in said court where said Marsh could bribe said judge for a very small sum of money to do whatever he wanted done, and to induce said non-resident to disregard the advice of his other attorneys to commence in the said United States circuit court. That said Marsh then and there substantially confessed to said non-resident that he has and could bribe said judge very cheaply. Your oratrix states all this on information and belief, but states that she has good and respectable witnesses to prove the same upon the hearing of this case; and she states, on information and belief, that she expects to be able to prove that said Marsh confessed that he had bribed said judge on the trial of her said action against Joslin.

"Your oratrix further states, on information and belief, that in all of his improper conduct with said judge of said court, that the said Marsh was acting as the attorney of said Joslin, and still is the attorney of record of said Joslin in said action, and by and with the con-

sent and approval of said Joslin, and that said Joslin is responsible for all the improper conduct of his said attorney in that behalf; and your oratrix further charges, on information and belief, that the statutes of Colorado make it a high criminal felony for any one to give any sum of money, directly or indirectly, or any other bribe, present or reward, or any promise, contract, obligation or security for the payment or delivery of *any money, present or reward, or any other thing, to obtain or procure the opinion, judgment or decree of any judge or justice of the peace acting within this state, or to corrupt, induce or influence such judge or justice of the peace to be more favorable to one side than the other in any suit, matter or cause pending or to be brought before him or them, and that both such person and such judge or justice of the peace is guilty of a felony under our statutes.* Sec. 102, R. S. 1883, p. 317.

"Your oratrix states, on information and belief, that the said long and secret interview between said judge and said Marsh while said action was being tried by said judge sitting as a jury, and the fact that said Joslin was a very wealthy man, and your oratrix very poor, was such grossly improper and suspicious conduct of itself on the part of both the judge and said Marsh, when followed by such a grossly unjust judgment, against every principle of law and confessed and admitted facts, and such strong evidence of bribery and corruption, that said judgment should be held to be wholly corrupt, fraudulent and void by this honorable court, and should not be interposed as a bar to this suit in behalf of said Joslin, or any of said defendants.

"Your oratrix states that she has been too poor to carry said judgment and action to the supreme court of this state in order to have the same reversed; that the stenographer and officers of said court demand about $125 for a copy of the evidence and record in said action, and that the printing of the same will cost about as

much more; and that her husband is a hopeless, helpless and expensive invalid at present residing in the city of Chicago, and has nothing to support him except what your oratrix and some of his friends give him; and that your oratrix is a delicate woman, and has a large family of children to support, and has been robbed of everything herself and children had in the world by said Joslin and Lamb, as alleged in this complaint; and that your oratrix is wholly remediless and helpless, and doomed to a life of toil and poverty, unless this honorable court shall grant her relief; and therefore your oratrix comes into this honorable court, and in a plain, truthful, straightforward and candid manner lays before this honorable court the facts, circumstances and history of her wrongs, with an abiding faith that this honorable court will grant her all of her just and equitable rights, without regard to the wealth, standing, influence or official position of those who have so grossly wronged and robbed her, and where the cruel and remorseless influence of bribery and corruption cannot reach her."

The respondents in their answer, in substance, deny that they falsely, wickedly and maliciously made the charges contained in the bill filed by them in the circuit court, but assert that they drew and filed said bill containing said charges in good faith, and in an honest and faithful discharge of their duties as attorneys, and they reaffirm, under oath, on information and belief, that all of said charges therein contained are true. The answer further alleges: " Respondents, in further support of said charges in said bill, allege that at the April term, A. D. 1886, of the district court of said county of Arapahoe and state aforesaid, and at the suggestion of this honorable court, said bill in equity, and all the charges contained therein, were laid before the grand jury of said county, and that said grand jury spent almost an entire week in making an investigation of said charges, and found two joint indictments against the said J. Jay Jos-

lin and Edward F. Lamb mentioned in said bill, and
upon the charges mentioned and fully set forth in said
bill.   *   *   *   Respondents state, on information and be-
lief, that said grand jury would also have found indict-
ments against said Marsh and Rogers for the crime of
bribery charged against them and the said Joslin in said
bill in equity but for the wilful and corrupt perjury of
one George W. Topping, a witness called in before said
grand jury, as fully set out in the cross-charges herewith
filed against said Rogers, Marsh et al.; and these respond-
ents charge, on information and belief, that said Rogers
and Marsh suborned the said Topping to swear wilfully
and corruptly false before said grand jury in order to
prevent said grand jury from finding indictments against
said Rogers, Marsh and Joslin for the crime of bribery
and corruption as charged in said bill in equity; and, as
a matter showing probable and reasonable cause for
making said charge of bribery and corruption in said bill
in chancery, these respondents state, on information and
belief, that notwithstanding said perjury on the part of
said Topping, that all of said grand jurors were fully
satisfied in their own minds that said Rogers, Marsh and
Joslin were guilty of the crime of bribery and corruption
as charged in said bill in equity, but were advised by the
prosecuting attorney that there was not sufficient evi-
dence, after said Topping had so perjured himself, to
justify a conviction beyond all reasonable doubt in a
criminal prosecution; and respondents further charge, on
information and belief, that Ledru R. Rhodes, the prose-
cuting attorney of said county, was, by some means un-
known to these respondents, corruptly induced and
influenced by said Marsh, Rogers and Joslin to oppose
the finding of all indictments against them by said grand
jury.   And respondents state, on information and belief,
that said Rhodes did, in violation of his oath of office,
and in gross violation of his duties of said office, use all
the power and influence he could with said grand jury to

prevent them from finding any indictments, or making any unfavorable reports, against said Rogers, Marsh and Joslin, as fully set forth in the petition of Mrs. Newton herewith filed, and which these respondents ask may be considered a part of this answer."

On the 12th of November, 1886, Messrs. Green and Johnson, as attorneys for Mrs. Isabel J. Newton, filed in this court a petition of the said Mrs. Newton asking a rule against Judge Merrick A. Rogers and Lucius P. Marsh and Ledru R. Rhodes to show cause why they should not be disbarred. The petition charges, *inter alia* —

"That the said Merrick A. Rogers, the judge of said court, unmindful of the duties of his said office, and also of his office as attorney and counselor at law, and in violation of his oath of office, was guilty of wilful and corrupt conduct, as your relator is informed and believes, in this, to wit: Your relator charges, on information and belief, that said Rogers, acting in his said office as aforesaid, in an action therein pending in his said court, wherein your relator, Isabel J. Newton, was plaintiff, and J. Jay Joslin was defendant, on or about the 20th day of April, A. D. 1886, and while said Rogers was trying said action, and sitting as both judge and jury, the said Rogers was guilty of the crime of bribery and corruption, as charged in the bill in equity filed in this procedure, and hereby referred to and made a part of these counter-charges; and your relator further charges, on information and belief, that the said Lucius P. Marsh, as the attorney of one J. Jay Joslin, bribed and corrupted the said Rogers, the judge of said court, to render a judgment in said action in favor of said J. Jay Joslin, as fully and specifically set forth in the said bill in equity; and your relator charges, on information and belief, that said Rogers acted, from a corrupt and partial motive, in favor of said Joslin, in rendering said judgment, and against every principle of law and justice, as charged in said bill in

equity, and which your relator states and charges, on information and belief, is true.

"Your relator further charges, on information and belief, that when said bill in equity was, at the suggestion of this honorable court, referred to the grand jury of the said county of Arapahoe and state of Colorado, at the April term thereof, and when said grand jury was engaged in the investigation of said charges contained in said bill in equity against said Rogers, Marsh and Joslin, and others, the said Rogers, Marsh and Joslin corruptly suborned a certain witness named George W. Topping, who was called before said grand jury, to wilfully and corruptly swear falsely and to perjure himself in order to prevent said grand jury from finding an indictment against Rogers, Marsh and Joslin for bribery and corruption, as charged in said bill in equity.

"Your relator further states, on information and belief, that said Ledru R. Rhodes, the prosecuting attorney as aforesaid, wholly unmindful of his duties as such prosecuting attorney, and in direct violation of his oath of office, and also of his office as attorney and counselor at law as well, colluded and conspired corruptly with said Rogers, Marsh and Joslin to use all of his power and influence, as such prosecuting attorney, to save and protect said Rogers, Marsh and Joslin from the consequences of a full, fair and impartial investigation of said charges contained in said bill in equity, and to obtain, if possible, what is generally called 'a whitewashing' by said grand jury for said Rogers, Marsh and Joslin, as your relator is informed and believes, and so charges on information and belief. * * * That the said Rhodes then and there, and in gross violation of his duties and oath of office, consulted, colluded and conspired with said Rogers, Marsh and Joslin, and their attorneys, touching the best manner to secure and protect the said Rogers, Marsh and Joslin against said crimes charged in said bill in equity, and consulted with said Rogers and said Marsh,

the attorney for said parties, as to the best means of protecting them from a prosecution for said crimes, and that said Rhodes consulted with said Rogers and Marsh, and with their said attorney, as your relator is informed and believes, with a view to trump up some false charge of some kind against T. A. Green and H. B. Johnson, your relator's attorneys, and said Rhodes was to use all of his power and influence, as said prosecuting attorney, to obtain an indictment against said Green and said Johnson. * * * And your relator charges, on information and belief, that said Rhodes made a corrupt promise or agreement, for some corrupt consideration unknown to your relator, whereby said Rhodes agreed with said Rogers, Marsh and Joslin that he would use all of his influence as such prosecuting attorney, and all the power and the great advantages he possessed as such prosecuting attorney, to prevent said grand jury from finding any indictments against any of said parties, and also from making any damning reports against any or either of said parties, and that in case said grand jury should find any indictment or indictments, or make or attempt to make any unfavorable reports, against said Rogers, Marsh or Joslin, that said Rhodes, as such prosecuting attorney, would, in the most secret manner and shortest possible time, suppress the same and at once dismiss any and all of such indictments, without allowing the same to become public or generally known, as your relator is informed and believes."

The petition further states that, in pursuance of said corrupt bargain, the said Rhodes did dismiss and enter a *nolle prosequi* in the case of the indictments against Joslin and Lamb.

These extracts show, in substance, the charges made in the petition for the disbarment of Rogers, Marsh and Rhodes. The answer of respondents denied each and every allegation of the petition. The two cases were consolidated, and heard by the court sitting as a trial court.

First case — Messrs. T. D. W. YONLEY, L. B. FRANCE and L. P. MARSH, for plaintiffs.

Messrs. THOMAS A. GREEN and H. B. JOHNSON, for respondents.

Second case — Mr. T. A. GREEN, for plaintiff.

Messrs. T. D. W. YONLEY and L. B. FRANCE, for respondents. L. P. MARSH, *pro se.* L. H. RHODES, *pro se.*

PER CURIAM. The relators in each of these proceedings seek to have the names of respondents stricken from the roll of attorneys admitted to practice before the courts of this state. The cases, although submitted together and upon the same evidence, will, so far as practicable, be separately discussed in this opinion.

1. The petition and answer in *People v. Rogers* present the following issues, viz.: Did Marsh proffer, and did Judge Rogers accept, a bribe in the *Newton Case?* Was the decision of Judge Rogers in said cause the result of a corrupt partiality on his part? Did Marsh and Judge Rogers, or either of them, induce Topping, by bribe or otherwise, to commit the crime of perjury before the grand jury? Did Marsh or Rogers, or either of them, tender a bribe to Rhodes, or otherwise corruptly endeavor to influence him in the discharge of his official duties with reference to the indictments in question? Did Rhodes accept this bribe, or a bribe from any person, to enter a *nolle prosequi* in connection with said indictments, or was he in any other manner corruptly influenced so to do?

It is not necessary for us to say that, if either of the respondents is guilty of the foregoing acts, he has disgraced the legal profession, and his license to practice should be promptly revoked. Such conduct, if tolerated, would soon bring the bench and the bar of the state into

disrepute, and confidence in a pure administration of justice would be effectually destroyed.

The offenses charged against Judge Rogers and Mr. Rhodes are acts committed in their official capacities as judge of the superior court of Denver and as district attorney of the second judicial district, respectively. Therefore they are grounds of impeachment under the constitution and statutes of this state. But both of these gentlemen have seen fit to waive legal objections, if any there be, against the present proceeding. They have appeared in response to the rule and filed an answer, putting in issue before us the truthfulness of the charges specified. They have, moreover, demanded a thorough and complete investigation by this court of their official conduct in the premises. We are not here called upon to review the decision of Judge Rogers in the case of *Newton v. Joslin*. Whether error supervened for which that judgment, upon a proper presentation, would be set aside, is a matter that is not and cannot be involved in the proceeding before us. This is not one of the methods provided for correcting the errors of inferior courts. Nor is the question whether or not the judgment in the *Newton Case* was obtained by the fraud or perjury of Joslin, his agents or witnesses, to be settled in this investigation. Neither can we now inquire whether the witness Topping committed the crime of perjury before the grand jury. It might be conceded, for the purposes of this case, that the judgment of Judge Rogers should be reversed for error, or that it should be treated in equity as wholly void because procured by fraud upon the court or by perjury; and it might also be assumed that Topping should be convicted of the latter crime. Yet these circumstances would not necessarily, in and of themselves, have any bearing upon the case now under consideration.

Impressed with the supreme importance of the questions presented, we devoted nearly a week to hearing the evidence and arguments of counsel in the two cases at bar.

All evidence offered to sustain the foregoing charges was admitted. A great deal of testimony which might, under a strict application of technical rules of evidence, have been excluded, was received. Petitioner and her attorneys were given a most unlimited discretion in the production of documents and witnesses to support the several matters averred by the petition. Since the trial we have most patiently and industriously weighed the proofs in all their bearings, and our conclusions are the result of a deliberate and careful consideration thereof. No useful end would be subserved by a discussion or analysis here of the evidence in detail. Besides, such analysis takes place, of necessity, in determining the case against Messrs. Green and Johnson. We are glad to say that, so far as this branch of the case is concerned, the good name of the judiciary and bar of the state remains untarnished. It is with profound satisfaction that we find ourselves compelled to declare each and every of the foregoing charges unsustained. We discover nothing which justifies a finding that either of respondents, in the transactions mentioned, committed a dishonest act, or entertained a corrupt motive. Their conduct was not inconsistent with a conscientious endeavor to honorably perform their official duties.

The rule in this case must be discharged.

2. It remains for us to consider the pleadings and evidence in the case against Messrs. Green and Johnson.

A bill filed in the circuit court of the United States by the respondents, as attorneys for Mrs. Newton, is made the basis of the petition for their disbarment. By reference to the pleadings set forth in the statement of facts preceding this opinion, it will be seen that the bill complained of charges, in substance, that Marsh gave, and Judge Rogers received, a bribe in the case of *Newton v. Joslin*, already referred to; also that Marsh told one Topping that he could bribe the judge of the superior court of the city of Denver, and had done so in said case. It

will be noticed also, by reference to the answer of respondents, that they admit the filing of the bill, but claim that in so doing they acted in good faith, and without malice, as the attorneys for Mrs. Newton. They also reassert the charges made in their bill against Marsh and Rogers, and aver their ability to prove them. It will be further seen, by reference to their answer, that respondents therein allege a new and distinct felony, namely, that when these charges of bribery and corruption were, at the suggestion of this court, brought to the attention of the grand jury, the said Marsh and Rogers were guilty of subornation of perjury, in that, with a view to their exculpation, they suborned one Topping to testify falsely before said body, and they further allege a conspiracy between Marsh, Rogers and the prosecuting attorney to defeat the investigation before the grand jury. These charges were so grave, were accompanied with such emphatic averments of ability to prove them, touched so closely the most vital interests of the public, that, as already suggested, we felt it our duty to depart from our general practice, and hear the entire case in open court, giving respondents the widest latitude in the introduction of testimony. Although we could not, on this proceeding, in any legal sense, review the trial in the superior court of the case of *Newton v. Joslin*, wherein Judge Rogers is alleged to have been bribed by Marsh, we nevertheless admitted all the pleadings and evidence in that case for the purpose of examining their bearing upon this case, but chiefly as affecting the motive of respondents in preparing and filing the bill in the federal court.

As we have seen, the respondents interpose two defenses: *First*, that the charges made in the bill complained of are true; *second*, that the pleading is privileged.

We have already considered these charges in connection with the petition of the respondents for the disbarment of Rogers and Marsh. No satisfactory evidence

has been presented to us showing that they are true. Before commenting further on the evidence we pass to the consideration of the second defense.

In actions for libel and slander, the English rule appears to be that judges, counsel, parties and witnesses are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings. The American courts, we think, as a rule, accept this doctrine, with the qualification, as to parties, counsel and witnesses, that their statements made in the course of an action *must be pertinent and material to the case.* This modification of the English rule is adopted in this country in order that the protection given to individuals in the interest of an efficient administration of justice may not be abused as a cloak from beneath which to gratify private malice. *McLaughlin v. Cowley,* 127 Mass. 319. Subject to this restriction, it is thought, on the whole, for the public interests, and best calculated to subserve the purposes of justice, to allow counsel full freedom of speech in conducting causes, and advocating and sustaining the rights of their constituents. *Hoar v. Wood,* 3 Metc. 198. The foregoing is the rule in actions of libel and slander. This is a disbarment proceeding, and we apprehend that the question presented is different, and must be determined upon different considerations.

"An attorney is liable to be removed from office by the court for sufficient reason and on proper showing. This reason and this showing are not necessarily limited to criminal offenses, or to an act which would create a civil liability. In the case of an attorney of the court, he may be removed from his office of attorney absolutely or for a limited period of time, or, in the common phrase, may be suspended or disbarred, for any matter or thing proved against him which shows that he is unfit to be permitted to practice in the court as one of its officers." "This unfitness may be shown by his guilt of a crime,

as theft, murder, burglary. It may also be shown by proof of such bad moral character as is inconsistent with such an honorable office. It may be shown by specific acts done in connection with his business in the court, or out of it, if it be in the practice of the duties of an attorney, which may show him unfit to be trusted as such, but which are short of any criminal offense." *Ex parte Cole*, 1 McCrary, 407; *Penobscot Co. Bar v. Kimball*, 64 Me. 153.

The powers, duties and privileges of an attorney are conceded. No question is made concerning them. The point made is that he is unfit to exercise and enjoy them. In an action for libel or slander for defamatory words, published or spoken, in the course of a judicial proceeding, it may be conceded that he may plead his privilege, and his plea must be allowed if the matter be pertinent and material to the issue. He enjoys this privilege by virtue of his license as an attorney. The gist of the complaint in this proceeding is that the respondents have abused this privilege, and that they are unfit persons to hold the license of this court, and to exercise and enjoy the rights and privileges which it confers. The petitioners in this case do not claim that respondents can be made to respond in damages in an action for libel or slander, but they come to this court, and allege most flagrant misconduct, and ask us to protect them and the public by withdrawing from the respondents, as unfit persons, our license authorizing them to practice as attorneys. We think there is an undoubted inherent right and power in this court to inquire into the abuse mentioned, and, if it be proven that the charges alleged in the bill referred to were made with malice and without probable cause, to disbar the respondents therefor. Our former opinion assumed and proceeded upon this theory, although we did not then discuss our *right* to enter upon such an inquiry. To say that a court which licenses an attorney cannot inquire into an abuse of its license is to

establish a class absolved from the demands of justice
and privileged to do injury — *legibus soluti*.  The argu-
ment that an attorney cannot be proceeded against civilly
or criminally only demonstrates the greater necessity for
the possession and exercise of the power to suspend or
disbar.   It is true that the pleading complained of was
filed in a federal court, but the attack was upon a state
court by an attorney holding a license of the state, and
of such a character as to bring into disrepute, and to de-
stroy public confidence in, the administration of justice
by a state tribunal.   Whether made in a federal court or
in a state court, such charges, made maliciously and
without probable cause, show the attorney making them
unfit to enjoy the rights and privileges of an attorney.
Aside from this, as we shall hereafter notice, the answer
of the respondents, and Green's separate petition for the
disbarment of Rogers, Marsh and Rhodes, afford distinct
and independent grounds for disbarment *sua sponte*.
That this power of disbarment is to be exercised guard-
edly, with full reference to the importance of freedom of
speech in conducting causes and in advocating and sus-
taining rights, is matter of course.

With the foregoing propositions in view, we proceed
to an examination of the facts in this cause, and the
claim of respondents that they acted in good faith and
upon probable cause.

We are cited by respondents to the character of the
decision rendered by Judge Rogers in the superior court
in the case of *Newton v. Joslin* as a sufficient ground to
justify both the belief and charge of bribery.   It may be
conceded, for the purposes of this case, that Judge Rog-
ers erred in his decision in that case, and that Mrs. New-
ton thereby suffered injustice.   These facts alone would
not constitute ground for charging the judge with hav-
ing acted corruptly in the premises.   It would be inde-
fensible to say that, because a judge commits error of
law or of fact, he is therefore corrupt, and that attorneys

aggrieved by the decision may, without other evidence, denounce him upon public records as a taker of bribes. The claim, however, of the respondents is that the decision complained of was so monstrous in its character as to shock the moral sense, and, taken in connection with other circumstances given in evidence, such as to justify both the belief and charge of bribery.    However erroneous the decision complained of may have been, we do not think that it can be fairly or justly, on the pleadings and on the evidence, characterized as a monstrous judgment.    There was much conflict of testimony; there was evidently perjury upon one side or the other; and much would depend upon the ability of the judge to determine the credibility of witnesses.    Much stress is laid upon the allegation that Joslin, on the trial of the cause before Judge Rogers, *confessed* the fraud.    While the testimony of Joslin may not free him from suspicion, it is not correct to say that upon the trial he confessed the fraud.

In addition to this alleged wrong and unjust judgment, the respondents aver and attempt to prove circumstances which to them strongly corroborated their theory of bribery.    They allege that, during the trial of the cause, the said judge and the said Marsh were frequently " secretly closeted together" at the judge's chambers, and at the office of the said Marsh.    Upon this point the evidence shows that Marsh, during a noon intermission of the court, while the trial of the case was in progress, was upon one occasion seen sitting in the judge's chambers talking with the judge.    No evidence was offered to show what the conversation was between the parties, or that it was not perfectly proper.    On the other hand the testimony of Marsh and Rogers is that, if they were together at said time and place, the meeting resulted from a casual call of the former upon the latter, while waiting for the incoming of the court, and that, if any conversation occurred, it had no relation whatever to the

case on trial. The judge's room was part of the sheriff's office, divided by a partition reaching part way to the ceiling. The door of this room and the one communicating with the sheriff's office and hall were, at the time, both open. The employees and deputies in and about the court and the sheriff's office were coming and going.

The respondents also proved that, upon one occasion during the progress of the trial, Judge Rogers was found coming out of Marsh's office. But the evidence shows that, prior to leaving the court-room, the judge had told the deputy sheriff that he (Judge Rogers) would call on his way to dinner at the office of Marsh and at the office of respondent Green, and notify them, as the attorneys in the case, to be present at the incoming of the court to receive the jury. The testimony further shows that, in pursuance of this declared intention, the judge did call at the said Marsh's office and so notified him; that he did not remain in the office; that he did not even take a seat; that he merely stepped within the door, and, having notified Marsh, turned to leave the office, when he met the bailiff sent for him by the deputy sheriff. While it must be remembered that the respondents, at the time they filed their bill, had no knowledge of these explanatory facts, the naked facts themselves, as they saw them, by no means justified the offensive, and, in the connection in which it was used, crime-imputing, allegation that the judge and Marsh were frequently found, during the pendency of said suit, "secretly closeted together." Such intercourse is common between judges and attorneys, and is no evidence, to a fair and candid mind, of bribe-giving and bribe-taking. Delicacy and prudence may suggest, upon a given occasion, to both attorney and judge, a limitation, if not a suspension, for the time being, of social intercourse; but the subject must be left to these guides. The proposition that attorneys and judges shall cease to call and converse because of pending litigation cannot be admitted. That no reputable

attorney would take advantage of social intercourse to approach a judge concerning litigation pending before him, and that no upright judge would permit of such an approach, is well understood by the profession. The only result of the rule contended for by respondents would be to inhibit social amenities between judges and members of the profession. It would not prevent a corrupt attorney and a corrupt judge from negotiating.

The respondent Johnson, in his testimony, tells us that upon the next day, or soon after the trial of the case of *Newton v. Joslin*, he met Marsh, and that, in the course of a conversation about the trial, the latter said to him: "It is better for attorneys to submit when they are beaten," or words to that effect. We confess to some surprise that we are cited to this as a circumstance worthy of consideration in connection with the charge that Marsh had bribed the judge, and do not deem it necessary to notice it further.

We come now to consider the alleged declarations of Marsh that he could bribe the judge of the superior court, and that he had bribed him in the case of *Newton v. Joslin*. These declarations, respondent Green testifies, were communicated to him by Topping. It may be questioned, if the declarations of Marsh were proven as alleged, they would be admissible as evidence against Rogers. Marsh denies under oath that he ever made any such declarations to Topping. Topping testifies to the same effect, and further denies, *in toto*, that he ever informed respondent Green that Marsh had made any such declarations. The respondent Johnson, upon this point, derived his information from Green, and does not claim that he ever had any conversation with Topping upon the subject. Let it be conceded that Topping made these statements to Green and also to the witness Robinson, and that Green, and not Topping, speaks the truth in this particular. The respondents do not appear to have taken any steps, or to have made any inquiry, to verify

the statement of Topping, although he was a non-resident and a comparative stranger to them, and although, according to their own testimony, he was a person willing to bribe a judge.  We are unwilling to say that the unsworn statement of a comparative stranger, about whose integrity, veracity and standing the respondents knew nothing, constituted "probable cause" for believing, charging and publishing upon official records that a brother attorney and the judge of an important court were guilty of an infamous crime.

When our attention, at the last term, was first called to the charges made by respondents against Marsh and Rogers, we directed that the whole matter be laid before the grand jury as a proper subject for their investigation. Such an investigation was had; and, while the grand jury found an indictment against Lamb and Joslin, they failed to find any bill against Marsh or Rogers.  On the other hand, it appears in evidence that, while they thought that Judge Rogers erred in his judgment, they made a report to the district court entirely exonerating him from the charges of bribery and corruption.  Thereafter the respondents came into this court, and by their sworn answer in this case, and Green by the petition for disbarment against Rogers, Marsh and Rhodes, advise and inform us of this investigation, and do not hesitate to charge subornation of perjury by Marsh and Rogers, perjury upon the part of the witness Topping, corruption upon the part of the prosecuting attorney by bribe-taking or otherwise, conspiracy between Marsh, Rogers and the prosecuting attorney to defeat the investigation, and a purpose to "whitewash" upon the part of the sworn members of the grand jury.  Of these wholesale charges of bribery and corruption, of subornation of perjury, and conspiracy before the grand jury, we invited proof.  The respondents have offered us substantially nothing.  It is true that Rhodes entered a *nolle prosequi* as to the indictments against Joslin and Lamb, but this appears to have

been with the consent of the court, in open court. There is no evidence that Marsh and Rogers ever had any conference or conversation or communication whatever with Rhodes touching the investigation before the grand jury. On the other hand, all of these parties testify without equivocation that not a word, written or spoken, passed between them upon the subject of the investigation, except the written communication of Judge Rogers asking the prosecuting attorney, in accordance with the suggestion of this court, to lay the charges made by Green and Johnson before the grand jury. The respondent Green testifies that some of these things charged were told him on the street; and this, taken in connection with the *nolle prosequi* entered by Rhodes, and other circumstances not of sufficient importance to enumerate, is regarded by him as sufficient to justify these charges of felonies, deliberately made in written pleadings in this court. We notice these new and distinct charges of felonies in the answer and the petition against Rogers and Marsh, and the evidence in support of them, as matter pertinent to the motive of respondents in this entire proceeding; as illustrating how grave the charges, and how insufficient the proof in support of them, and as constituting in and of themselves an abuse of the confidence of this court, which justifies the disbarment of at least one of the respondents, *sua sponte.*

The foregoing is a brief statement of the evidence upon which respondents claim to have acted. Whether the averment in respect to the declarations of Marsh and Topping that he (Marsh) could bribe Judge Rogers, and did bribe him in the *Newton Case*, was material, we do not consider. We determine the issues as though this allegation were not questioned as immaterial.

We appreciate all that can be properly said touching the independence of the bar. We recognize fully the importance of such independence to all good government, and its value as a means of securing the fair, impartial and pure

administration of the laws. We have no desire to abridge it, and upon all proper occasions will take care that it shall find full protection and vindication in the decisions of this court. But under no considerations applicable can we find justification for the conduct of respondents in the matters before us. We have declared that the charges made in the bill, the petition and the answer are wholly unsustained by the evidence. They therefore must be regarded as false. The language employed by bill, petition and answer, in connection with the charges, is of such a character to produce a strong impression that its author, Green, must have been actuated by malice. This impression is strengthened into conviction by the slender foundation upon which the charges are shown to have rested. Respondent Green, in our judgment, considering the facts proven, singly or together, cannot be said to have acted upon probable cause. These charges were made upon such slight information, governed apparently by such unfounded suspicions, and with such reckless disregard of injury to professional and judicial character, that the inference of malice, at least with regard to him, becomes irresistible. Neither the letter nor the spirit of the attorney's privilege permits him to enter our courts and spread upon judicial records charges of a shocking and felonious character against brother attorneys, and against judges engaged in the administration of justice, upon mere rumors, coupled with facts which should, of themselves, create no suspicion of official corruption in a just and fair mind. And although, in actions of libel and slander, it has been thought wise to exempt them from liability for defamatory words, published or spoken, in the course of judicial proceedings, provided such words are material, in a disbarment proceeding the recognition of such a privilege could neither secure justice nor advance the independence of the bar. On the contrary, its inevitable tendency would be to destroy the respect due to the profession as well as

to the bench, and cripple the influence and usefulness of both. Upon a careful review of the evidence, therefore, we are forced to the conclusion that the conduct of respondent Green in the premises was prompted by malice, and was without probable cause.

As to whether respondent Johnson acted with malice in connection with the bill filed in the federal court, the evidence is not so satisfactory. Differences appear in the grounds upon which the conduct of the two respondents is predicated. Green was the senior counsel, and Johnson was called in by him as assistant. Johnson had nothing to do with planning or preparing the bill referred to. When he was called into the case, this bill had been drawn by Green and had been signed and verified by Mrs. Newton. Topping had been favorably introduced to Johnson by a gentleman in whom the latter had confidence. Johnson relied upon the reports given by Green and Robinson of Topping's assertions relating to the bribery of Judge Rogers in the *Newton Case*. Topping had never employed Johnson; he was a client of Green. Johnson depended upon Green's statements as coming from a brother attorney. The evidence clearly shows that previous to and during the trial of the *Newton Case* the strongest ill-will existed between Green and Marsh. On the other hand, the relations of Johnson and Marsh and of Johnson and Rogers were perfectly friendly. Johnson would therefore be less likely to act with malice towards one of these defendants in filing said bill. The petition for disbarment in *People v. Rogers*, submitted and tried with this case, was prepared by Green. Johnson had no knowledge of its contents until the same had been filed. Upon learning that this independent proceeding had been instituted and his name connected therewith as attorney, he withdrew entirely from that case and declined to have anything to do with the prosecution thereof. It is a fact of which, in determining the degree of punishment, this court may properly take judicial

notice that the name of Green has once before been stricken from its roll for malconduct in office; such malconduct being a malicious verbal assault upon the judge of a district court for rulings in a case before said judge wherein Green was of counsel (*People v. Green,* 7 Colo. 237), while, on the other hand, respondent Johnson has hitherto, so far as we are informed, always conducted himself in accordance with the highest demands of professional dignity and courtesy. Under these circumstances, we are not prepared to say that Johnson's conduct in filing the bill in the federal court was not the result of undue zeal for the welfare of his client, rather than of malice towards Judge Rogers or either of the other defendants. We cannot, however, view his action in the premises as blameless. We think he proceeded without that caution and circumspection which the gravity of the charges demanded; and that his conduct, especially in connection with the answer filed in this court, is highly censurable. Before signing his name to the bill or to the answer he should have made a much more careful and thorough investigation as to the truthfulness of their averments. But while we cannot excuse his conduct in the premises, we have concluded to vacate the judgment of disbarment hitherto pronounced. We think the suspension from practice which has already taken place, and its continuance until the April term of this court, a sufficient punishment. The judgment of disbarment is accordingly revoked, and his name is restored to the roll of attorneys. He will, however, remain suspended from practice until the first day of the April term aforesaid. The judgment of disbarment pronounced against respondent Green will remain undisturbed.

The opinion heretofore filed is withdrawn, and the foregoing will be substituted in lieu thereof as the opinion of the court.