## STATE EX REL. BENTON *v.* BAUM.

[Submitted January 26, 1893. Decided January 2, 1894.]

ATTORNEYS—*Disbarment.*—Where an attorney made an agreement to try a case for his client in the justice court for $25, and another to try it in the district court for $25, and a third to appeal it to the supreme court for $25, which several amounts he received, performing only the first two services and deliberately neglecting to take the appeal, and during the time within which he might have appealed procured and converted $23 which had been paid into court for his client on the judgment from which he agreed to appeal; and also opened a letter addressed to another client, which had been sent in his care, containing a check for $100, upon which he indorsed his client's name, and procured the money, which he refused to pay over upon demand, although having no claim or lien upon it for fees or otherwise—such conduct is ground for disbarment under sections 106, 107, 5th division of the Compiled Statutes vesting the supreme court with power, in its discretion, to disbar an attorney for malconduct in his profession, and also for refusing, upon demand, to pay over money to which his client is entitled.

APPLICATION for the disbarment of an attorney.   Granted.

DE WITT, J.—This is an application for the disbarment of Peter M. Baum, an attorney of this court. The relator, Charles H. Benton, judge of the eighth judicial district court, filed, in this court, written charges against said Baum. An

order was issued that respondent show cause why his license should not be revoked, and his name stricken from the roll of attorneys. Upon service of that order, Mr. Baum filed an answer. The matter was thereupon referred to E. R. Russel, Esq., of Great Falls, who was appointed by this court as referee, with the usual powers of such officer, to take the testimony of witnesses and report the same to us. That report is now before us. We will examine it, and ascertain whether the charges were proved, and whether they are sufficient upon which to pronounce a judgment disbarring respondent from the practice of law.

We will give our attention to only two of the charges. The first may be stated as follows: Joseph Horn employed Baum to prosecute an action for him, in a justice court, against one James Baatz, on a claim amounting to $71.50. The price agreed upon for the service was $25, which amount Horn paid to Baum. The service was performed, and judgment was rendered in the justice court for $60 in favor of Horn. Baatz appealed to the district court. Thereupon Baum and Horn made a second agreement that Baum should try the case in the district court for another $25. This amount was also paid by Horn to Baum. In the district court, Horn obtained a judgment against Baatz for $30. Thereupon a third contract was made between Horn and Baum, by which Baum agreed to appeal the case, and argue it in the supreme court, for another $25. This money was paid by Horn, and accepted by Baum. Baum did not appeal the case to the supreme court, but allowed the time for so doing to expire. Judgment for costs was entered against Horn in the district court by reason of the fact that the judgment of the justice of the peace was reduced on the trial *de novo* in the district court. The sheriff collected this judgment for costs from Horn. The defendant, Baatz, against whom was the judgment for $30 in the district court, paid that amount of money into court in satisfaction. Baum, as Horn's attorney, received this $30 from the clerk of the district court, less $7 costs, which belonged to the justice of the peace. This $23, so received by Baum, he retained, and converted to his own use.

The second charge is as follows: One Robert Temple was

arrested, charged with perjury. He employed Baum to defend him. While he was in jail he paid Baum $20, and, after being released on bail, he paid him a further sum of $30 as a retainer. Temple wrote to a relative in Washington, D. C., asking for money, and directing the relative to send the letter in care of the law firm of which Baum was a member. This letter was sent, containing a check for $100, payable to Temple. This letter was by Baum opened. Baum took the check, $100, and indorsed it, " R. Temple, per Peter M. Baum," and " Peter M. Baum." He cashed this check at a Great Falls bank, and retained the money. Temple gave Baum no authority to open his letter, or to take his check or indorse it, or to receive money on it. Temple, discovering what Baum had done, discharged him from his service, and demanded the $100, which was refused. We do not deem it necessary to notice the other charges made in the complaint.

At the hearing before the referee, Mr. Baum appeared in person, and was present at every session, the referee never proceeding with testimony until Baum appeared. Baum was not only afforded a full cross-examination of the witnesses for the state, but he was permitted to revile the witnesses and counsel, to insult the referee, to ridicule the proceedings, to challenge persons to fight, and to indulge generally in such disgraceful conduct that we much regret that the referee did not stop the hearing, and at once certify to us the acts which were taking place before him, for the referee was a part of this court, and Baum's offenses against the referee were offenses against the court. (*In re Haldorn*, 10 Mont. 222.)

Perhaps it may not be amiss to note a few examples of Baum's conduct. Early in the proceedings Mr. Baum remarks " that he does not care any thing for the people who appear in this proceeding; that he defies them, and defies the supreme court to do him any harm in this case; and that nothing can be proved. I say that Ed L. Bishop never made a cent in this country until I took him into business. I took him into my office a pauper. That he don't know enough to chew gum, and has cheated me every time he has had a chance."

Again, Baum remarks: " Mr. Baum asks now that you

bring in the court clown." Again, Baum says to one of the counsel: "You stole the balance of my money. If I was the biggest coward on earth, I would knock out the man that said that to me." At another point we have the following: "Here Mr. Baum noticed W. M. Cockrill, clerk of the district court of Cascade county, standing in the door of the referee's office, and said to him, 'Come in William and see the circus.'" Mr. Baum, in objecting to a question does it as follows: *Mr. Baum.* Mr. Baum says that that question is leading, and outrageous, and ridiculous, and nobody but a fool would ask such a question. I say that to the supreme court, and also say that Mr. Baum says it is directory." Again, commenting upon a question, he says: "Who ever heard of a lawyer asking a question that way. Just say now, also, that if Mr. Bishop was a gentleman, and born south of Mason and Dixon's line, he would have licked Mr. Baum before this time." Speaking of himself, Baum again says: "We will see. Counsel may be drunk, but I would rather have his head drunk than yours sober. We will have a circus before we get through." Mr. Baum remarks to one of the counsel as follows: "Relating to this check: Bishop, if you had my head, drunk, it would be worth millions of dollars to you." At another time Mr. Baum says: "Old man —— [naming one of the members of this court] will be amused when he sees this." Addressing Mr. Cockrill, a bystander, Mr. Baum says: "Sit down before I lick you, Cockrill." Mr. Horn, a German, being upon the stand as a witness, Mr. Baum remarks: "Oh, a Dutchman will do any thing, you know. I wish you would say to the supreme court that I would like to have such a thing as that Bishop out in a green field. I believe the crows would be scared." Again Mr. Baum remarks to one of the counsel: "I would like to have you put down that, now. Baum now says he would like to take Bishop out, and slap his face; that I think he is the laziest darn dog that was ever born. I now say that Pop Baum took him into his office when he had n't any reputation or business, and let him make money, and that all the money he ever got, and all the reputation he ever had, he got through Pop Baum. Pop Baum made every thing there is in him." Speaking of the same German witness above noted, Baum

remarks: "I think he lies about that." The following is one of Mr. Baum's methods of objecting to a question: "Objected to upon the ground that Bishop is a fool. I want to show the supreme court what a fool you are, you dirty loafer." To the witness he says, "Pull off your shoes, and wash your feet. Now, you keep your mouth shut, and don't tell him a damn thing." To punish Baum for this conduct before the referee is now impracticable (further than the judgment disbarring him) as he absconded from this state about the time the evidence for the state in this proceeding was closed.

The two charges above recited were clearly and amply proved by the witnesses for the state. We will examine the Horn matter for a moment. It is proved beyond a cavil that there were three express and well-understood contracts between Horn and Baum—one contract to try the case in the justice court for $25; another, to try it in the district court for $25; and the third, to appeal and try it in the supreme court for $25. These several amounts were all paid to Baum. He performed the first two services. He was paid to appeal the case to the supreme court. He did not forget to take the appeal. He deliberately did not do it, but, on the other hand, did something else; that is to say, during the time within which he might have appealed, he went to the clerk's office and collected $23 which had been paid into court for his client on the judgment from which he had agreed to appeal. This $23 he appropriated and converted. So he not only deliberately and knowingly omitted to do that which he had agreed to do, and had been paid for doing, but he also converted a sum of money belonging to his client. There is no pretense, by the mouth of any witness, that Baum had, or ever made or pretended to have, any claim upon this $23 for fees owing from Horn. In Baum's cross-examination of Horn he tries to make it seem unreasonable and ridiculous that an attorney would agree to take a case to the supreme court for $25, and that therefore it must be untrue that he agreed to do it. It may be unreasonable to believe that an attorney would attempt such a service, paying costs, transcribing, printing, and expenses, for $25. But Baum did not attempt the service. The evidence does not show that he ever intended to take the appeal,

but it does show that he intended to promise to do it, and that he intended to get the $25 for the promise, and intended to give no further consideration for that money than the promise. So much for the Horn matter.

We will look at the Temple charge. Here the evidence is just as clear. It is established that Peter M. Baum opened Robert Temple's letter; that he took therefrom Temple's check for $100; that he indorsed Temple's name, and collected Temple's money, and put it into his pocket—and all this without permission or authority, expressed or implied. There is no pretense here that, even if Baum had 'obtained possession of this money lawfully, he had any right or claim or lien upon it, for fees or otherwise. Upon the last day that evidence was taken Mr. Baum was present, as he was at every hearing. An adjournment was taken to March 4, 1893, at 10 A. M. Adjournments were taken as follows: To the same day at 2 P. M.; to March 13th, 10 A. M.; to March 27th, 10 A. M.; to April 19th, 10 A. M. At none of these hearings did Baum appear. The referee then closed the hearing. Mr. Baum did not offer a syllable of proof, by himself or any other witness, in contradiction of the charges and testimony of the state.

As above noticed, he has left this jurisdiction. We have held the report of the referee from the date of its filing, May 23d, until this time, January 2, 1894, so that respondent should have ample opportunity to make a defense. After the filing of the complaint in this matter, and pending the proceeding, Baum's conduct towards Judge Benton was such as was utterly unbecoming an attorney. About the time the hearings before the referee were being continued from day to day, awaiting Baum's presence, some further affidavits were filed in this court setting forth Baum's conduct. Although evidence was not taken upon these charges, the affidavits were made by respectable persons of Great Falls, and Baum has never appeared to controvert the charges therein contained. It may therefore be proper to refer to them in connection with the other matter above reviewed. It is set forth that Baum, in the presence of several persons, stated that Judge Benton was a hypocritical —— —— —— ——, and ought to be impeached; that he (Baum) owned the court (referring to Judge Benton); and that "Charley Benton

is afraid of me [Baum], and will do what I want him to."
Another affiant alleges that Baum, on the streets of Great Falls,
in the presence of a number of persons, stated that he had been
running the judge of the district court for a year or so, and
that the judge did whatever he (Baum) desired him, regarding
litigation in which he was interested, and that the judge was
all right while he was under Baum's control. The other
charges in these affidavits are as to personal abuse by Baum of
Benton, and some of it in Benton's chambers at the courthouse.
The conduct described must have sorely taxed the judicial calm
of Judge Benton, and made him wish, for the time, that he
were a citizen only, and not a judge of the court. The charges
in these affidavits can add nothing to the severity of the judg-
ment of this court. They only further show the abyss of
degradation into which the respondent has fallen. We have
shown what the charges against Peter M. Baum are. We have
shown that they were proved. We have shown what Baum's
conduct was in the presence of the referee, and his conduct
pending those proceedings.

We have the following statute: "In all cases where an
attorney of any court of this state, or solicitor in chancery,
shall have received, or may hereafter receive, in his said office
of attorney or solicitor, in the course of collection or settle-
ment, any money or other property belonging to any client, and
shall, upon demand made, and a tender of his reasonable fees
and expenses, refuse or neglect to pay over or deliver the same
to the said client, or to any person duly authorized to receive
the same, it shall be lawful for any person interested to apply
to the supreme court of this 'state for a rule upon the said
attorney or solicitor to show cause, at a time to be fixed by the
said court, why the name of said attorney or solicitor should
not be stricken from the roll, a copy of which rule shall be
duly served on said attorney or solicitor at least ten days pre-
vious to the day upon which said rule shall be made returnable;
and if, upon said rule, it shall be made to appear to the said
court that such attorney or solicitor has improperly neglected
or refused to pay over or deliver said money or property so
demanded as aforesaid, it shall be the duty of said court to
direct that the name of said attorney or solicitor be stricken from

the roll of attorneys in said court." (Comp. Stats., div. 5, p. 621, § 107.) We also have a provision, in section 106, that the justices of the supreme court, in open court, shall have power, in their discretion, to erase the name of an attorney or counselor at law from the roll for malconduct in his profession. Section 107 is sufficient to sustain a judgment disbarring Baum. We are of opinion that section 106 is also ample authority. Baum's acts were "malconduct in his profession." It would be undignified for a court to stop to discuss whether Baum's acts, as above described, were professional malconduct. He shocks professional ethics and all common morals. The standard of morals in the profession of law ought to be at a high mark. Mr. Baum was once very near expulsion from that profession (July term of this court, 1890). At that time he was saved by the view that we took of the courtesy which seemed to be due from us to the supreme court of the state of New York. (In re Baum, 10 Mont. 223.) The offenses charged against him at that time were committed in the state of New York, and it seemed that the New York supreme court had jurisdiction, and had taken proceedings against Baum, which were then pending and undetermined. On that ground we then omitted to take action.

Furthermore, perhaps it is not amiss to state that this court was then addressed in behalf of Mr. Baum by gentlemen of the bench and bar in high standing in sister states. Mr. Baum was by us given the opportunity to secure an honorable place in his profession in a rapidly developing community, and among a generous people. It is characteristic of the people of the west to forgive the past, and to give the helping hand of fellowship to every struggler for a larger day and better life. Mr. Baum has flagrantly abused this sentiment of the court and the people of this state. It is the judgment of this court that the license, as an attorney, of Peter M. Baum, is revoked, and that his name be stricken from the roll of attorneys of this court, and that he is debarred from practicing in any of the courts of this state, or from exercising any of the privileges of an attorney or counselor of law.

PEMBERTON, C. J., and HARWOOD, J., concur.