[No. 4672. Decided May 29, 1903.]

*In the Matter of the J. C. WAUGH Disbarment Proceedings.*

SUPREME COURT — JURISDICTION — DISBARMENT OF ATTORNEYS.

The supreme court has no jurisdiction of proceedings for the disbarment of an attorney, either under constitutional authority, or by virtue of its inherent powers, although the attorney may have perpetrated a fraud upon the superior court in gaining admission to practice (ANDERS, J., and FULLERTON, C. J., dissent).

*Original Proceeding for Disbarment.*

*Thomas M. Vance,* for petitioner.

*Smith & Brawley* and *M. P. Hurd,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is a disbarment proceeding, brought originally in this court against the respondent, based substantially upon the following allegations, namely: That at the time James C. Waugh applied for admission to the bar of the superior court of Skagit county, state of Washington, to wit, on December 1, 1890, he did not possess the qualifications requisite for admission to the bar, in that he was not a citizen of the United States, nor did he ever study law with an attorney in this state for the time required, nor did he possess a certificate from the supreme court of any other state or territory, nor had he ever been admitted to practice law in any other state or territory of the United States; that at the time he secured a certificate of admission to practice law in this state he concealed his disqualification, and thereby committed a fraud upon the court. A demurrer has been interposed to the petition, which raises the question of the jurisdiction of this court

to entertain the petition and try the cause. It is contended by the relator that this court has inherent power to protect itself from fraud, and will exercise summary jurisdiction over its attorneys, who are in a sense officers of the court. The inherent power of a court is an undefined quantity and an undefinable term, and courts have indulged in more or less loose expressions concerning it. It must necessarily be that the court has inherent power to preserve its existence and to fully protect itself in the orderly administration of its business. Its inherent power will not carry it beyond this. The case *In re Lambuth,* 18 Wash. 478 (51 Pac. 1071), has been called to our attention as sustaining the contention that this court has jurisdiction in disbarment proceedings; and language was certainly used in that case which would tend to sustain this contention. But, outside of the fact that the disbarment proceeding was entertained by the court, what was said in that case was pure dictum, as the question of jurisdiction was neither discussed nor raised in the trial of the cause, but the cause was tried solely upon the merits; the defendant disavowing any intentions of offense or disrespect, and asking to strike the offensive language from the petition for rehearing which was the subject of the contempt proceedings. In that case, however, the contemptuous act was directed to this court, and the language used had a tendency to bring the court directly into contempt and impair its usefulness, so that in any event the case would not be a case in point here. Ordinarily a court can enforce adequate protection from the wrongful acts of attorneys by imposing upon them the penalties prescribed by the law for a breach of duty due to the court, and if this can be accomplished under the law there is no necessity to resort to inherent power. But the questions discussed in *In*

*re Lambuth, supra,* are really not involved in this case.
This is not a proceeding for contempt of this court, and it
is not necessary to determine in this action whether, in an
action against a defendant for such contempt, it would be
necessary for the court to go outside of the remedy provided
by law and draw on its inherent power to protect its dig-
nity and preserve its usefulness; for the defendant is not
charged with contempt of this court, or with any action
which would in any way reflect on this court or interfere
with the transaction of its business.  But he is charged
with committing a fraud upon the superior court of
Skagit county, the court which, under the provisions of
the law then in existence, admitted him to practice; and
while, in a limited sense, all courts, in common with so-
ciety, are affected by the moral plane on which the attor-
neys of the state stand, the fraud practiced upon this court
by gaining admission upon a certificate obtained by fraud
is not such an assault on this court, in our opinion, as
would warrant it in usurping the jurisdiction of the su-
perior court upon the theory of inherent power.  This
court is a creature of the law, and, outside of the necessity
which we have mentioned above, cannot possess any inher-
ent power to exercise original jurisdiction which is exclu-
sively conferred by law upon another tribunal.  And orig-
inal jurisdiction in this kind of a case is especially con-
ferred upon the superior court by both the fundamental
and statutory law, and, while the jurisdiction is not made
exclusive in terms, the whole tenor of the section of the
article of the constitution in relation to original jurisdic-
tion plainly indicates that it is the intention to bestow, not
only original jurisdiction, but original exclusive jurisdic-
tion, upon the superior court in the cases therein specified.
The same may be said of the statutory, as well as of the

constitutional, provision.   Section 4 of article 4 of the
state constitution provides, that the supreme court shall
have original jurisdiction in habeas corpus and quo war-
ranto and mandamus as to all state officers.   The same sec-
tion provides that the supreme court shall have power to
issue writs of mandamus, review, prohibition, habeas cor-
pus, certiorari, and all other writs necessary and proper to
the complete exercise of its appellate and revisory juris-
diction; and under any well-known rule of construction its
original jurisdiction would be confined to the cases speci-
fied, and especially construed in connection with § 6 of the
same article, which provides that the superior court shall
have original jurisdiction in all cases in equity, and in all
cases at law which involve the title or possession of real
property, and in numerous other cases mentioned, and then
provides that it shall have original jurisdiction in such
special cases and proceedings as are not otherwise provided
for, and that it shall have original jurisdiction in all cases
and of all proceedings in which jurisdiction shall not have
been by law vested exclusively in some other court.   And
as was said by this court in *State ex rel. Kantoor v. Su-
perior Court,* 15 Wash. 668 (47 Pac. 31, 37 L. R. A. 111,
55 Am. St. Rep. 907), after quoting the above constitu-
tional provisions:

"It thus appears that the jurisdiction of the supreme
court and of the superior courts of this state is expressly
defined by the constitution, and reference must therefore
be had to that instrument in order to determine the ques-
tion of jurisdiction in any particular case."

Sections 4650 and 4663 of Ballinger's Code enact sub-
stantially the provisions of the constitution above referred
to.   Some suggestions have been made that by reason of
the fact that the law confers the power of admission on
this court, it necessarily follows that the power to disbar is

conferred; but we are unable to see the force of these sug-
gestions, for, outside of the fact that the legislature would
be powerless to confer original jurisdiction in one court
when the constitution vested it exclusively in another,
many rights are decreed by courts which may be modified
by other courts. Outside of constitutional limitations, the
legislature certainly has a right to prescribe the qualifica-
tions of attorneys. It may prescribe one forum to admit
under such qualifications and another to disbar for rea-
sons satisfactory to the legislative mind. In that respect,
in the absence of constitutional limitation, the legislative
will is absolute. But it has not undertaken to interfere
with the original jurisdiction conferred by the constitu-
tion on the superior court. It has simply clothed this
court with power of admission, and has been content to
stop there, properly leaving the jurisdiction in disbarment
where it is vested by preceding laws and by the constitu-
tion. Under the provisions of the law passed by the last
legislature, the real determination of the qualifications of
applicants for admission to the bar, in case of persons
graduating from the law department of the state univer-
sity of Washington, is vested in the faculty and the
trustees of that institution; the duty of this court being
purely perfunctory, certain general qualifications being
shown, showing that in the legislative mind the order of
the admission to the bar is not regarded as a strictly judi-
cial proceeding. And the same may be said with relation
to the admission of attorneys to practice law by an exam-
ination and judgment of the superior court under the law
in existence at the time of the admission of the defendant
in this case, and under the provisions of which laws an
applicant was entitled to practice in this court upon ex-
hibiting a certificate by virtue of his admission in the su-

perior court.  Whether this action be considered a criminal or a quasi criminal action, as it is held to be in some jurisdictions, or a civil action, involving a property right, as was indicated by this court in *State ex rel. Rohde v. Sachs,* 2 Wash. 373 (26 Pac. 865, 26 Am. St. Rep. 857), the respondent has a right to have his cause tried by the superior court and reviewed by this court on appeal.  This is in harmony with both the letter and the spirit of the law, which created one court a trial court with original jurisdiction, and the other, with certain specified exceptions, a court of appellate jurisdiction.

The demurrer is sustained.

MOUNT and HADLEY, JJ., concur.

ANDERS, J. (dissenting)—The sole question presented for determination in this proceeding is whether this court has jurisdiction, in the first instance, to disbar attorneys who have been admitted to the bar of this state.

The majority of the court has determined that it has not such jurisdiction, but I am constrained to dissent from that conclusion.

It is true that the jurisdiction of the supreme court and superior courts of this state is defined by the constitution.  And it is also true that original and exclusive jurisdiction of disbarment proceedings is not vested in the superior courts by any express provision of the constitution; and I do not think that it ought to be announced as the law of this state, that such exclusive jurisdiction must necessarily be inferred from the general provisions of that instrument, mentioned in the majority opinion.  Long prior to the adoption of our constitution, it was the settled rule that all courts of general or superior jurisdiction are vested with certain necessary and inherent powers, among which is the power of controlling their own officers.  And, in my

opinion, it should not be assumed that the framers of our constitution intended to create a supreme court in and for the state of Washington, which should not possess those powers which are necessary for the protection of the court itself and the proper administration of justice, and which have hitherto been universally considered as inseparable from such courts. It seems to be conceded in the prevailing opinion that this court has power to punish attorneys for contempt. And, if that be true,—and I have no doubt that it is,—it is by reason of the court's inherent power, and not by virtue of any provision of the constitution of the state. The object and purpose of a contempt proceeding is punishment; but the purpose of a proceeding to disbar an attorney is not punishment, within the ordinary meaning of that word, but simply to rid the profession of an unworthy member, and the court of an unfit officer. But the power to accomplish the one or the other of those purposes is not derived from legislative enactments or constitutional provisions. Its origin is necessity and is, therefore, inherent in the court. Says a learned author:

"The power to strike from the rolls is inherent in the court itself. . . . Statutes and rules may regulate the power, but they do not create it. It is necessary for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients. And where certain grounds are specified by the statute, this does not necessarily exclude striking from the rolls for causes not specified. A statute is not to be construed as restrictive of the general powers of the court over its officers." Weeks, Attorneys (2d ed.), pp. 154-155.

And Judge Works, in his valuable treatise on Courts and Their Jurisdiction, at § 27, p. 170, observes:

"All courts of general and superior jurisdiction are possessed of certain inherent powers not conferred upon

them by express provisions of law, but which are necessary to their existence and the proper discharge of the duties imposed upon them by law. Of these inherent powers, the following may be enumerated: . . . to suspend or disbar attorneys, or strike their names from the rolls."

As to the power of appellate courts in cases such as the one at bar, that author, in § 21, p. 98 of his work, above cited, lays down the law as follows:

"A court may be vested with both original and appellate jurisdiction, and courts whose jurisdiction is essentially and so far as their express authority is concerned entirely appellate, are possessed of certain inherent and incidental powers, which belong to every court of general or superior jurisdiction, whether its jurisdiction be original or appellate."

And it seems to me that the above quotation constitutes a very clear and correct statement of the law upon the subject under consideration, as announced by the courts of last resort throughout this country.

That appellate courts habitually and unhesitatingly assume jurisdiction to strike the names of attorneys from the rolls, or to suspend them from practice, for unprofessional conduct, is evidenced by the following cases: *In re Whitehead,* 28 Ch. Div. 614; *Penobscot Bar v. Kimball,* 64 Me. 140; *People ex rel. Elliott v. Green,* 7 Colo. 237 (3 Pac. 65, 374, 49 Am. Rep. 351); *In re Wellcome,* 23 Mont. 140 (58 Pac. 45); *State ex rel. Benton v. Baum,* 14 Mont. 12 (35 Pac. 108); *In re Badger* (Ida.), 35 Pac. 839; *In re Kowalsky* (Cal.), 35 Pac. 77; *In re Tyler,* 78 Cal. 307 (20 Pac. 674, 12 Am. St. Rep. 55); *Dean v. Stone,* 2 Okl. 13 (35 Pac. 578); *In re O———,* 73 Wis. 602 (42 N. W. 221).

See, also, 3 Am. & Eng. Enc. Law (2d ed.) and 4 Cyc., title, "Attorney and Client."

Although no statute is necessary to authorize this court to entertain a proceeding of this character, the legislature has, nevertheless, provided that an attorney and counselor may be removed or suspended by *any court of record* of the state for certain specified causes, and that, in all cases of removal or suspension by a superior court, the judgment or order of removal or suspension may be reviewed on appeal by the supreme court. Bal. Code, § 4775. And a proceeding to remove or suspend an attorney may be taken by the court of its own motion, for matter within its own knowledge, or upon the information of another, and in either case the party has the privilege of making his defense. Bal. Code, § 4776. "Such proceedings shall be by motion and answer, and evidence may be examined on either side." Bal. Code, § 4777.

While these legislative declarations as to the power of courts of record to remove or suspend members of the bar do not, as I have endeavored to show, create such power, still they are entitled to respectful consideration as expressions of the will of the law-making body of the state upon a question of vast importance to the courts, to the legal profession, and to the public. But, so far as the procedure is concerned, the statute is mandatory; for that is a matter within the exclusive province of the legislature.

In *In re Lambuth,* 18 Wash. 478 (51 Pac. 1071), which was a proceeding to disbar an attorney, and which was instituted by the attorney general at the instance of the court itself, this court exercised what it then understood to be one of its inherent powers, and declared the law, in its opinion, in language almost identical with that quoted above from Weeks on Attorneys. It is now said,

in effect, however, that the question of jurisdiction was not presented or passed upon in that proceeding, and that all that was there said by the court relative to its inherent power was purely *dictum*. But, however that may be, I think it can safely be said that the doctrine announced in the *Lambuth Case* has been generally, if not universally, recognized and acted upon by the courts from the time of King Henry IV down to the present day. See Weeks on Attorneys, § 80; *Bradley v. Fisher,* 13 Wall. 335. Attorneys are everywhere considered as officers of the court, and in this state they are required by statute, when admitted to practice, to file an official oath.

And it has heretofore been generally conceded, as a matter of course, that all courts of record have inherent power to control the conduct of and to suspend or remove such officers. But this usual and salutary rule, I regret to say, is abrogated by the decision in this case, and this court will hereafter be powerless to remove or suspend an attorney for just cause, without the interposition and assistance of the superior court. I think the demurrer should be overruled.

FULLERTON, C. J., concurs in dissenting opinion.