[No. 7095.   Decided December 26, 1907.]

In the Matter of Proceedings for the Disbarment of
J. W. ROBINSON.[1]

ATTORNEY AND CLIENT—DISBARMENT—JURISDICTION. The supreme court has inherent original jurisdiction, irrespective of statutes, to suspend or disbar an attorney for contemptuous conduct.

SAME—GROUNDS—CONTEMPTUOUS CONDUCT. An attorney is guilty of contemptuous conduct warranting his suspension from practice, under Bal. Code, § 4765, requiring an attorney to maintain due respect for the court and to refrain from any artifice or false statement and all offensive personality, where his petition for a rehearing attempts to intimidate the court into rendering a favorable decision by setting forth that scandalous and offensive rumors are current to the effect that a majority of the court had prejudged the case and agreed to dismiss the appeal in return for political favors received, and that the only way to refute such scandals and uphold the dignity of the court would be to deny the motion to dismiss and hear the case on its merits.

SAME—DEFENSES—DISAVOWAL—SENTENCE. A disavowal of improper motive in the employment of scandalous and contemptuous language in a petition for a rehearing, with an apology, will not be considered a complete defense to disbarment proceedings, where the attorney had long experience at the bar; and the offense being flagrant, mere reprimand is insufficient, and the attorney will be suspended for six months, and costs of briefs taxed against him.

[1] Reported in 92 Pac. 929.

Hearing on application for disbarment filed in the supreme court, November 16, 1907, upon motion of the attorney general. Order of suspension entered.

*The Attorney General, A. J. Falknor, Assistant,* and *R. G. Sharpe,* for applicant.

*Ben Sheeks, W. R. Bell,* and *T. M. Vance,* for respondent. ·

Crow, J.—On September 26, 1907, this court dismissed an appeal in cause No. 6800, entitled "In re Estate of John Sullivan, Deceased. Marie Carrau, appellant, v. Edward Corcoran et al., respondents." On October 28, 1907, J. W. Robinson, as attorney for the appellant, filed a petition for rehearing, containing the following language:

"When I started to dictate this petition for rehearing, I intended to place herein the facts as to the rumors which had become common property of the public in the City of Seattle, at the time and shortly after the motion to dismiss this appeal was filed in May, 1907, claiming and pretending to know in advance, which of the honorable members of this court were to vote to dismiss this appeal, and the names of four of the members of this court were bandied from mouth to mouth in public, who it was alleged, for political reasons, were to dismiss this appeal, involving an estate worth more than a million dollars, one-half of which, as shown upon the records in this court for years past, belonged or would belong to the political ring who has controlled the politics of this state for years and under whose influence and direction it was stated certain members of this honorable court were nominated to their present exalted position, and the head of which ring was in position to control with the president of the United States the Federal patronage in the State of Washington, which included in the very near future the position of our circuit and two United States district judges, for which positions members of this court had been agreed upon, and that this rumor was such common property in Seattle as well as in other portions of the state, that business men and citizens of integrity feeling humiliated that any person would dare make such a suggestion or such a statement about the judges of

the highest court in this state, that they were demanding that a grand jury investigate the litigation and the people including the courts, connected with the litigation and distribution of the Sullivan estate. And while we fully realize that this honorable court and its members are practically powerless to meet such assaults, and that its dignity ordinarily will not allow or permit its members to recognize such slander, it is nevertheless true that this honorable court in passing upon this motion to dismiss this appeal had the opportunity, and as we believe it was its duty to itself and to each member of the court, and to the good name of the court and the good people of this state, and as a complete and perfect answer to all that was being said in the exercise of the court's powers to dismiss an appeal for failure to do something which did not go to or affect the jurisdiction of the court, to have resolved every doubt in favor of hearing the same, and thus wiped out every slander in the exercise of its discretion, and said that it would hear this appeal upon its merits, thus giving the world to know that it was far from such politics.

"And barring absolutely the personal interest and selfishness of litigants and counsel, and we submit that it became the duty of this honorable court, as sacred and conscientious as any responsibility which ever rested upon them, to deny this motion and hear this appeal upon its merits, which was the only method in harmony with its dignity under the circumstances. And the influence of such a decision in the face of the poison, slander and infamy, which has been heaped upon certain members of the court, would have had the best possible influence upon the good the supreme court of the State of Washington may do for the next third of a century. This is an age when corruption and political graft have become so almost universal in official life, as viewed and believed by the masses, that no opportunity to disabuse the mind of such ought to be overlooked by the courts.

"It is possible that the members of this honorable court do not know of that which started as gossip, then grew into rumor, and then to positive statements and to a fixed belief in the minds of very many people until it became the common property of all, heard upon the streets, in the hotels and in every social gathering; but if this honorable court, or any member of it, has any doubt as to this condition or the names of the members of this honorable court of whom these things

have been said, all they are required to do is to ask some intimate friend in Seattle to investigate and in confidence to report, and they will find that their names, and what has been claimed, and what is alleged they have pledged to do in advance, concerning this appeal and its dismissal, will have been in the mouths of the best business and professional people in Seattle, as well as in the mouths of the uneducated bootblack and bellboy.

"This petition for rehearing, while it is filed in a public office does not become public property, and the public knows nothing of what is said in these petitions, unless those who file them or some other person desire they should get to the public; and so these words are said to the court without any desire in the remotest degree to reflect upon the court; but these sentences are dictated because of a high sense of duty in harmony with a high ideal of courts and judges, and with the statement that it is said with the greatest respect for this honorable court, and with the hope that some action may be deemed proper to the end that such conditions and those causing them may be not overlooked or forgotten."

On November 16, 1907, an order was entered, directing the attorney general to institute proper proceedings, citing said J. W. Robinson to appear and show cause why, for his offense in using such language, his name should not be removed from the roll of attorneys admitted to practice law in the state of Washington. Being duly cited, the respondent appeared in person and by attorney, and filed a verified answer, in which he in substance alleged that he was enrolled as an attorney of this court in July, 1883; that it has at all times since been his purpose to uphold the dignity, good name, and independence of the courts; that he admits the writing and filing of the petition containing the language above quoted; that in using such language he had no thought or intention of being insolent or disrespectful toward this court; that the language was hastily dictated, but two days prior to the expiration of the time for filing the petition; that it was hurriedly transcribed and submitted without opportunity to consult his associate counsel; that in none of the language used

did he intend to induce this court, by other than what he considered legitimate argument, to decide in his favor; that the proceeding wherein the petition was filed was one of arduous litigation, extending over a period of seven years, and of vast importance to his client; that the rumors mentioned had come to his knowledge, weighed on his mind, annoyed him both on account of his case and also on account of the feeling he entertained for the good name of this court; that at no time prior to the order of this court directed to the attorney general, had it occurred to him that the language might be thought contemptuous or in any way disrespectful to this court or any of its members; that he now accepts the action of the court as holding that the language may be susceptible of such construction; that he respectfully asks permission to expunge the same, and that he now offers to, and does, apologize to this court. He prays that his disclaimer be accepted; that the objectionable language be stricken; that he be permitted to substitute a corrected petition, and that these proceedings be dismissed.

By his answer the respondent does not question our original jurisdiction, but his attorneys did so in their oral argument in response to the opening brief of the attorney general. It is well settled by numerous decisions that a court authorized to admit an attorney has inherent jurisdiction to suspend or disbar him for sufficient cause, and that such jurisdiction does not necessarily depend on any express constitutional provision or statutory enactment. In the *Lambuth case*, 18 Wash. 478, 51 Pac. 1071, this court said:

"But power to strike from the rolls is inherent in the court itself. No statute or rule is necessary to authorize the punishment in proper cases. Statutes and rules may regulate the power, but they do not create it. It is necessary for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients. Attorneys may forfeit their professional franchise by abusing it, and the power to exact

the forfeiture is lodged in the courts which have authority to admit attorneys to practice. Such power is indispensable to protect the court, the administration of justice, and themselves; and attorneys themselves are vitally concerned in preventing the vocation from being sullied by the conduct of unworthy members."

Respondent's attorneys insist that this decision has been overruled by the subsequent case, *In re Waugh*, 32 Wash. 50, 72 Pac. 710. A clear distinction exists between the two cases. In the *Lambuth* case the proceeding was an original one, ordered by this court under circumstances almost identical with those now before us. There, as here, the respondent incorporated offensive language in a petition for rehearing, and this court in the proper exercise of its jurisdiction directed that original disbarment proceedings be instituted. In the *Waugh* case the fraudulent acts complained of were alleged to have been immediately directed against the superior court of the state of Washington in and for Skagit county, and it was held that the proceedings for disbarment should originate in that court. Although certain expressions in the *Waugh* case when considered separately might possibly suggest the oral arguments made by respondent's attorneys, an examination of the entire opinion will show their contention to be without merit. We have never held, nor was it ever our intention to hold, that this court has no original jurisdiction in a proceeding such as the one now before us. Such jurisdiction undoubtedly exists. Weeks, Attorneys at Law (2d ed.), p. 154, § 80; *In re Lambuth*, *supra*; *Bradley v. Fisher*, 13 Wall. 335, 20 L. Ed. 646; *People v. Green*, 9 Colo. 506, 13 Pac. 514; *State ex rel. Johnson v. Gebhardt*, 87 Mo. App. 542; *In re Boone*, 83 Fed. 944; *In re Smith*, 73 Kan. 743, 85 Pac. 584, and note; *State v. Mosher*, 128 Iowa 82, 103 N. W. 105, 5 A. & E. Ann. Cas., p. 990, and note.

Bal. Code, § 4765 (P. C. § 3187), provides that,

"It shall be the duty of an attorney and counselor,— . . . 2. To maintain the respect due to the courts of jus-

tice and judicial officers; . . . 4. To employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the judge by any artifice or false statement of fact or law; . . . 6. To abstain from all offensive personality, . . ."

The use by respondent of the insulting, contemptuous, and scandalous language contained in the petition for rehearing constitutes a flagrant violation of each and all of the statutory duties above mentioned. *People v. Green, supra; People ex rel. Skelton v. Brown,* 17 Colo. 431, 30 Pac. 338; *Morrison v. Snow,* 26 Utah 247, 72 Pac. 924; *In re Snow,* 27 Utah 265, 75 Pac. 741; *In re Philbrook,* 105 Cal. 471, 38 Pac. 511, 884, 45 Am. St. 59; *In re Woolley,* 74 Ky. 95.

After a careful analysis of respondent's language, we are compelled to hold that he has failed to maintain the respect due to the court; that he has not abstained from offensive personalties, and that he has attempted to intimidate this court into rendering a favorable decision. He is an attorney of ability and long experience in the practice of his profession, who has participated in much important litigation involving intricate questions of law and large financial interests, and has also served as one of the superior judges of this state. It would be idle to suggest that he does not understand the ethics of the honorable profession of which he is a member; that he does not comprehend the obligations resting upon attorneys and counselors at law; or that he does not appreciate that dignity, honor, and respect which should always be extended to the judiciary. In his petition he presented all relevant points, and must have known that the language now under consideration was not germane thereto. While we neither concede nor believe that the rumors mentioned were current in the city of Seattle or elsewhere, nevertheless, if such false and scandalous rumors should at any time exist, a petition for rehearing would not be a proper medium for calling them to the attention of this court. Although we shall not incorporate in this opinion any extensive analysis of the respondent's lan-

guage, we will call attention to certain of his statements with the intention of showing that, while he disavows any personal belief in the alleged rumors, they were deliberately injected by him into the petition with the premeditated design of intimidating this court. The respondent in part said:

"And barring absolutely the personal interest and selfishness of litigants and counsel, and we submit that it became the duty of this honorable court, as sacred and conscientious as any responsibility which ever rested upon them, to deny this motion and hear this appeal upon its merits, which was the only method in harmony with its dignity, under the circumstances. And the influence of such a decision in the face of the poison, slander, and infamy, which has been heaped upon certain members of the court, would have had the best possible influence upon the good the supreme court of the State of Washington may do for the next third of a century. This is an age when corruption and political graft have become so almost universal in official life, as viewed and believed by the masses, that no opportunity to disabuse the mind of such ought to be overlooked by the courts."

This language is susceptible only of the construction that, notwithstanding the respondent's disavowal of his personal belief in the alleged rumors, he has made them a part of the records of this court with the evident intention of intimidating its members into rendering a decision in his favor. He substantially contends that such action is the only avenue of escape for this court from further scandalous rumors which would surely follow an adverse decision. In other words, a reinstatement of his client's appeal would quiet all rumors and protect the good name, integrity and honor of this court, while a contrary ruling would subject it to further charges of political deals, official corruption, and flagrant dishonesty. If the language used does not by innuendo imply that a decision against respondent's client would be such proof of the truth of the alleged rumors as to bring the members of this court into disrepute, we are unable to understand it.

The respondent further said:

"This petition for rehearing, while it is filed in a public office does not become public property, and the public knows nothing of what is said in these petitions, unless those who file them or some other person desire they should get to the public; and so these words are said to the court without any desire in the remotest degree to reflect upon the court; but these sentences are dictated because of a high sense of duty in harmony with a high ideal of courts and judges, and with the statement that it is said with the greatest respect for this honorable court, and with the hope that some action may be deemed proper to the end that such conditions and those causing them may be not overlooked or forgotten."

In view of the fact that petitions for rehearing need not be served on the opposite party prior to being filed in this court, this language clearly intimates that only by suppressing the petition and granting its prayer, without calling for an answer, can this court protect itself. Further discussion of respondent's statements is unnecessary. Our position is one of extreme delicacy. False and scandalous charges are said to have been made against the members of this court, and the respondent has improperly incorporated them in his petition. By reason of his acts it was our duty to direct the attorney general to institute these proceedings, and we must now pass judgment. Respondent has made an emphatic disavowal of intentional disrespect for this court or any of its members, has withdrawn the statements made, has apologized for his conduct, has requested that the offensive language be stricken; has asked that he be dismissed, and cites the following authorities in support of his contention that courts will not, in the face of a complete disavowal and apology, disbar for offensive language or conduct. *Ex parte Secombe*, 19 How. 13, 15 L. Ed. 566; *Ex parte Bradley*, 7 Wall. 364, 19 L. Ed. 214; *Bradley v. Fisher*, 13 Wall. 335, 20 L. Ed. 646; *In re Philbrook*, 105 Cal. 471, 38 Pac. 511, 884, 45 Am. St. 59, and note; *Dickens' Case*, 67 Pa. St. 169, 5 Am. Rep. 420; *In re*

*Austin,* 5 Rawles (Pa. St.) 206; *In re Snow,* 27 Utah 265, 75 Pac. 741.

By reason of such retraction no order of disbarment will be made. In view of respondent's long experience at the bar, we cannot discharge him with a mere reprimand. An order of suspension must be entered.

It is ordered that the respondent's prayer to strike the offensive language be granted. It is further ordered that the respondent be suspended from the practice of his profession as an attorney and counselor at law in the courts of this state for the period of six months from the date of the filing of this opinion, and that he pay the costs to be taxed for printing the brief of the attorney general.

HADLEY, C. J., DUNBAR, MOUNT, RUDKIN, and ROOT, JJ., concur.

FULLERTON, J. (concurring)—I concur in the judgment pronounced by the court in the foregoing opinion. I concur also in the holding that this court has inherent jurisdiction to suspend or disbar an attorney for sufficient cause shown, and that such jurisdiction does not necessarily depend on any express constitutional provision or statutory enactment. This is abundantly shown in the case of *In re Lambuth,* 18 Wash. 478, 51 Pac. 1071, the dissenting opinion in the case of *In re Waugh,* 32 Wash. 50, 72 Pac. 710, and the majority opinion in the case at bar. But in concurring in the judgment I do not wish to be understood as concurring in the interpretation put by the majority on the case of *In re Waugh.* That case as I understood it when it was decided, and as I understand it now, overruled the case of *In re Lambuth,* in so far as the latter case held that this court had inherent power and original jurisdiction to entertain a disbarment proceeding against an attorney, and held that no such power or jurisdiction existed. But since the court now entertains such jurisdiction, it impliedly, at least, overrules the case and reinstates that of *In re Lambuth.* This being true, the question as to what was really

held in the *Waugh* case is no longer a very material one, and for that reason I refrain from discussing it.   I cannot, however, refrain from expressing my regret that the court did not directly overrule the case instead of undertaking to distinguish it.