## CHAS. FULLER v. STATE.

[57 South. 806.]

1. CRIMINAL LAW. *Suspension of sentence. Inherent power of court.*

The power to suspend the execution of a sentence during good behavior has not been conferred upon any court in this state by the Constitution or statutes, and such power not being essential to the existence of the courts, they have no such inherent power.

2. CRIMINAL LAW. *Void judgment. Suspension of sentence.*

That part of a judgment in a criminal case which directed "that the jail sentence be suspended during good behavior of defendant" was void and the defendant could have been taken into custody immediately upon the rendition of the judgment.

3. SAME.

It is immaterial that a longer period of time than that for which the prisoner was sentenced has elapsed since the sentence was imposed, for while he was at large under a void order, to which he did not object, he was in the same situation that he would have been had he simply escaped from custody.

APPEAL from the circuit court of Hinds county.
HON. W. A. HENRY, Judge.

Chas. Fuller was convicted of unlawful retailing. From an order imposing a suspended sentence defendant appeals.

The facts are fully stated in the opinion of the court.

*Potter & Hindman,* for appellant.

There are many cases upon the power of the court to suspend the execution of a sentence either indefinitely or to a time certain, the decisions being in conflict.

There are a great many other cases, somewhat similar that have to do with recommitment, on constitutional provision and statutes, providing for pardons, parols,

etc., but we must insist that this case is not governed by decisions on the power of the court to suspend passing of sentence, or to suspend execution of sentence or in those cases involving pardon and parol laws. Those cases only apply here that have to do with the power of a judge to pronounce a sentence contingent on the happening of some uncertain future event; cases in a distinct class to themselves.

*Scott* v. *Chischester,* 16 L. R. A. (N. S.) 304. Prisoner who is paroled without statutory authority cannot upon violation of his parol, be required to remain in prison beyond the time when the original sentence expired.

*Ex parte Williams Clendenning,* 97 Pac. 650. Defendant, on a plea of guilty was sentenced to pay costs and a fine and thirty days in jail but the jail sentence was suspended "on good behavior" held after the lapse of time involved in the sentence and after the term. The court had no power to issue commitment on such judgment.

*In re Stricker,* 51 Kan. 100. Defendant was convicted of the unlawful sale of intoxicating liquors and the operation of a sentence suspended "during such time as the defendant shall keep the peace with all mankind and desist from all unnecessary use of intoxicating liquors, and refrain from becoming intoxicated. Held the defendant could not be recommitted after the expiration of the term named in the sentence.

In the above cases the courts said that to hold a sentence over a man and then require him at some future time to serve the entire sentence, was a greater punishment than the original sentence, because he is partially restrained during the time the sentence is hanging over him and is compelled to serve the full sentence in addition thereto.

*Sylvester* v. *State,* 65 N. H. 193, holds in a case similar to this one, that the courts of that state have inherent powers to suspend sentence pending good behavior.

This is the only case we have found holding directly against our contention.

*Suttle* v. *Lang,* 100 Me. 123, November 10, 1902. Petitioner arrested before the Skowhegan municipal court, charged with the offense of the unlawful sale of intoxicating liquors. Before pleading to the complaint the petitioner, the prosecuting complainant and the judge came to an agreement by which ·the petitioner should plead guilty and be sentenced to fine, costs and imprisonment, but no mittimus in execution of the sentence unless the petitioner should again be guilty of unlawfully selling intoxicating liquors. The judge afterwards believed the defendant guilty of selling intoxicating liquors, and ordered the mittimus to issue. Held that the municipal court had no legal right to issue the mittimus when it did and the arrest and commitment under it illegal and the prisoner discharged.

*Burch & Stricker,* for appellant.

An examination of the authorities indicate a classification of cases on this subject as follows:

(1) The suspension of the rendition, or pronouncement of sentence or judgment without statutory authority, as a power inherent in the court.

(2) The suspension of the same with statutory authority. The cases being in conflict as to the power of the court to do either on the ground of an encroachment upon the pardoning power.

(3) The suspension of the execution of the whole of a sentence for a limited time, without statutory authority. (Some cases holding that this might be done until the end of the term for certain purposes, others holding to the contrary.)

(4) The suspension of the execution of the whole of a sentence for a limited time with statutory authority, and even beyond the term, for certain specific purposes. (Some cases denying this power in the absence

of constitutional permission; all denying it in the absence of statutory·permission.)

(5)   The suspension of the execution of the whole of a sentence for an indefinite time, and on the happening of a future and contingent event. (The courts universally denouncing this practice as absolutely without legal authority.)

But we have searched the books in vain for a single case where the facts and circumstances are like the case presented here; that is to say, where under an alternative penalty statute, one of the penalties was imposed and enforced, and the other entered by the way of notation and memoranda, and referred to the vicissitudes of futurity, that the court, or any court, has held that the same was valid and legal and could in any manner be enforced.   Such memoranda, or notation, has been universally defined as void and non-enforceable, or declared *"nil"* and non-existent.

We refer the court to the following authorities, in their order, which, when considered in connection with the principal features of this case, will we believe, result in a reversal thereof, an annulment of the imprisonment notation on the docket, and a final discharge of the prisoner. *Ex parte William Clendenning* (Okla.),. 97 Pac. 650; *Tuttle* v. *Lang,* 60 Atl. 892; *In re Strickler,* 51 Kan. 700; *Morris* v. *State,* 1 Black. (Ind.)   37; *Com.* v. *Patterson,* 1 Leg. Chron. (Pa.) 73; *Cheeseman* v. *People; Larney* v. *Cleveland,* 34 Oh. St. 599; *Wallace* v. *State,* 41 Fla. 547; *Brownbridge* v. *People,* 38 Mich. 751; *In re Webb,* 89 Wis. 354; *In re Markuson,* 5 N. D. 180.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

The single question here presented is as to the authority of the court to impose a sentence and suspend the execution thereof and subsequently to order the sentence carried out.   This is common practice among many of

the circuit judges and seems now to be tested in the supreme court for the first time, though a case similar to the one at bar was presented in 68 Mississippi, to which I shall hereafter refer.

The court must not confuse the two distinct propositions which are, first, the suspension of the imposition of the sentence; and, second, the suspension of the execution of a sentence previously imposed. I contend that the court has the right to do either, but decisions in many states vary, so I call attention in advance to the question presented by the case at bar, which is the suspension of the execution of the sentence.

Mr. Bishop, in his New Criminal Procedure, vol. 1, sec. 1299, p. 799, uses this language: "Every court which has power to award an execution may grant a suspension of its own sentences." The power seems to be inherent in courts to do this in the absence of any constitutional or statutory prohibition. The courts of the several states, however, seem to be divided, both as to the power of a court to suspend pronouncement of sentence, and thereafter impose it, and of the power of a court to impose a sentence and suspend its execution and afterwards call for its enforcement; so I shall endeavor to give the court the benefit of a few citations upholding the announcement of our own court, which I presume the court as at present constituted will follow.

Our own court in *Gibson* v. *State*, 68 Miss. 241, where a defendant pleaded guilty to an indictment charging him with unlawful retailing and the court entered a judgment suspending the sentence as to fine, but taxing the defendant with costs, and afterwards, on motion of the district attorney, sentenced the defendant to pay a fine and costs, speaking through Justice Campbell, said:

"As the defendant pleaded guilty, and was liable to be immediately sentenced to pay a fine and costs, and to be imprisoned, and the court, presumably with the consent of the defendant, for whose benefit it was and who

did not object, suspended judgment and postponed sentence except for costs, no wrong was done to him by pronouncing at a future term the sentence, which might have been immediately given, but was thus delayed.

"It is not the case of a second punishment for an offense."

In the case of *Sylvester* v. *State,* 65 N. H. 193, s. c. 20 Atl. 954, the court held likewise, using the following language:

"It has been a common practice in this commonwealth after verdict of guilty in a criminal case, when the court is satisfied that, by reason of extenuating circumstances, or of the pendency of a question of law in a like case before a higher court, or other sufficient cause, public justice does not require an immediate sentence, to order with the consent of the defendant and of the attorney for the commonwealth, and upon such terms as the court in its discretion may impose, that the indictment be laid on file; and this practice has been recognized by statute. Statutes 1865, ch. 223; 1869, ch. 415, s. 60. Such an order is not equivalent to a final judgment, or to a *nolle prosequi* or discontinuance by which the case is put out of court, but is a mere suspending of active proceedings in the case, which dispenses with the necessity of entering formal continuances upon the dockets, and leaves it within the power of the court at any time, upon the motion of either party, to bring the case forward and pass any lawful order or judgment therein." *Com.* v. *Dowdican's Bail,* 115 Mass. 133, 136.

And, again, on the same subject: *Weber* v. *State* (Ohio), 41 L. R. A. 472; *State* v. *Crook* (N. C.), 29 L. R. A. 260; *Lange case* (U. S.), 18 Wall. 163; *State* v. *Hatley,* 14 S. E. 751; *People* v. *Graves* (N. Y.), 31 Hun 382; *People* v. *Monroe County* (N. Y.), 23 L. R. A. (O. S.) 856.

SMITH, J., delivered the opinion of the court.

Appellant suggests that we have confused the question of a court's power to suspend the imposition of a sentence with the question of its power to suspend the execution of a sentence after it has been imposed. As the first question it not involved herein, we will pretermit any discussion thereof, and confine ourselves to the latter; that is, the power of a court to suspend the execution of a sentence after it has been imposed.

Power to suspend the execution of its sentence has not been conferred upon any court in this state by our Constitution or statutes, and consequently, if such power exists at all, it must be one of the inherent powers of courts, or be derived from the common law. The inherent powers of a court are such as result from the very nature of its organization, and are essential to its existence and protection, and to the due administration of justice. *Watson* v. *Williams,* 36 Miss. 331; *In re Waugh,* 32 Wash. 50, 72 Pac. 710; 8 Am. & Eng. Ency. Law, 28: 4 Words and Phrases, 3605. It cannot be said that power to suspend the execution of a sentence is essential to the existence or protection of a court, or that it is essential to the due administration of justice, and consequently it has no such inherent power.

At common law, while a judgment remained unreversed, there were only two methods by which its execution could be stayed or prevented: First, by a reprieve, which merely delayed the execution of the sentence; second, by a pardon, which operated as an absolute bar to its execution. The power to pardon was never claimed or exercised by the courts, and will not be further considered here. Reprieves were of three kinds: First, *ex mandatio regis;* second, *ex arbitrio judicis;* third, *ex necessitate legis.* The first and third kinds of reprieves have no relevancy here, and we may dismiss them from further consideration. Reprieves *ex arbitrio judicis,* or discretionary reprieves, were granted by the courts only

in exceptional cases, to prevent abuses of their process, and to prevent irreparable injustice from being done to defendants. Some of the circumstances under which this power was exercised were as follows: "Where the defendant pleads a pardon, which, though defective in point of form, sufficiently manifests the intention of the crown to remit the sentence, where it seems doubtful whether the offense is included in some general act of grace, or whether it amounts to so high a crime as that charged in the indictment. The judge sometimes also allows it before judgment, or at least intimates his intention to do so, as when he is not satisfied with the verdict, and entertains doubts as to the prisoner's guilt, or when a doubt arises, if the crime be not within clergy, or when, from some favorable circumstances, he intends to recommend the prisoner to mercy." 2 Hawkins, Pleas of the Crown, 657; 2 Hale, Pleas of the Crown, 412; 1 Chitty's Crim. Law, 757; Archbold's Crim. Plead. & Prac. 206; 4 Blackstone, 394. This right of the court did not rest on any express authority or recognized principle, but stood alone on ancient usage. 2 Dyer, 205.

In Bishop's New Crim. Proced. (4th Ed.), section 1299, it is stated that "the law of respite or reprieve *appears* to apply alone to capital cases." In 1 Chitty's Crim. Law, 577, and *Sterling* v. *Drake,* 29 Ohio St. 457, 23 Am. Rep. 762, the statement is positive that reprieves were granted only in capital cases. As all of the early cases which have come under our observation, upholding this power of the court, were cases wherein the death penalty was imposed, it may be that the law relative thereto applies only to capital cases. It is unnecessary, however, for us to so hold here, for the reason that the power to suspend the execution of a sentence was never exercised or claimed by the courts at common law, as we have heretofore stated, except when necessary to prevent an abuse of their process, or to prevent irreparable injustice from being done a defendant.

It may be also, as some courts have held, that the difference between our present criminal procedure and that of the early English courts is such that it is no longer necessary or proper for the courts to grant reprieves; but it is unnecessary for us to express any opinion on this point, for the reason that the reprieve or suspension granted in the case at bar was not for the purpose of preventing an abuse of the court's process, or to prevent any injustice from being done appellant, but simply that it might be held over him in *terrorem,* thereby forcing him to refrain from further acts of lawlessness and to become a more law-abiding citizen. Since the "great end of punishment is not the expiation or atonement of the offense committed, but the prevention of future offenses of the same kind," it may be that courts ought to possess the power within certain limits to suspend the execution of a sentence during good behavior; but the question before us is not what power the courts ought to have, but what their power in fact is. Among the cases upholding the foregoing views are *Spencer* v. *State* (Tenn.), 140 S. W. 597; *State* v. *Abbott,* 87 S. C. 466, 70 S. E. 6, 32 L. R. A. (N. S.) 112; *In re Webb,* 89 Wis. 354, 62 N. W. 177, 27 L. R. A. 356, 46 Am. St. Rep. 846; *Tanner* v. *Wiggins,* 54 Fla. 203, 45 South. 459, 14 Ann. Cas. 718.

We have examined all the cases called to our attention which are in real or apparent conflict with the views here expressed, and have re-examined those cited in support of our former opinion, and find that all of them are either not in point or were decided upon a misconception of the inherent powers of a court, or of what the common law upon this point was: In *State* v. *Crook,* 115 N. C. 760, 20 S. E. 513, 29 L. R. A. 260, which was a case involving the power of the court to suspend the imposition of a sentence and not of the execution thereof, the court, in upholding the power of the lower court so to do, frankly stated that it could find no precedent to sup-

port its decision. We are therefore of the opinion that we erred in holding that the lower court had inherent power, or any power at all, to suspend the execution of a sentence during the good behavior of a defendant.

It does not follow from this, however, that appellant must now go unpunished. That portion of the judgment which directed "that the jail sentence be suspended during the good behavior of the defendant" was void, and the defendant could have been taken into custody immediately upon the rendition of the judgment. The postponement of his imprisonment was presumably with his consent, for it does not appear that he at any time requested, as he had the right to do, to be taken into custody, and consequently he cannot now object to being called upon to serve it. *"Concensus tollit errorum."* *Gibson* v. *State,* 68 Miss. 241, 8 South. 329. It is immaterial that a longer period of time than that for which appellant was sentenced has elapsed since the sentence was imposed. While at large under this void order, to which he did not object, appellant was in the same situation that he would have been, had he simply escaped from custody. In such case the sentence is not satisfied until it has been actually served. *Ex parte Bell,* 56 Miss. 282; 1 Bishop's Crim. Proced. (4th Ed.), 1384; *Spencer* v. *State* (Tenn.), 140 S. W. 597; *State* v. *Abbott,* 87 S. C. 466, 70 S. E. 6, 33 L. R. A. (N. S.) 112; *Miller* v. *Evans,* 115 Iowa, 101, 88 N. W. 198, 56 L. R. A. 101, 91 Am. St. Rep. 143; *Neal* v. *State,* 104 Ga. 509, 30 S. E. 858, 42 L. R. A. 190, 69 Am. St. Rep. 175; *Tanner* v. *Wiggins,* 54 Fla. 203, 45 South. 459, 14 Ann. Cas. 718.

We have carefully examined the cases cited in opposition to this view, and think they were erroneously decided. In our former opinion we held that the exercise by the courts of the power to suspend the execution of a sentence was not in conflict with that clause of our Constitution which gives to the governor the power "to grant reprieves and pardons"; but, since we have as-

certained that the court below had no power to suspend the execution of appellant's sentence, it now becomes unnecessary for us to express any opinion upon this point, and all that was said in our former opinion relative thereto is hereby withdrawn.

The suggestion of error is overruled.

*Overruled.*