[No. 3.   Disbarment Proceedings.   May 11, 1918.]

*In the Matter of the Proceedings for the Disbarment of*
JAMES B. BRUEN.[1]

CONSTITUTIONAL LAW — COMBINING LEGISLATIVE, ADMINISTRATIVE
AND JUDICIAL POWERS—ATTORNEYS—DISBARMENT. The power to hear
and determine the right of an attorney to practice law being in-
herent judicial power, Laws 1917, p. 421, giving to the state board
of law examiners the power to hear and determine disbarment pro-
ceedings, creates a judicial tribunal, which at the same time is
combined with the administrative and delegated legislative power
to examine applicants for admission to the bar, investigate the con-
duct of attorneys, and initiate complaints for disbarment, in vio-
lation of Const., articles 2, 3 and 4, providing for three separate
and distinct branches of government.

ATTORNEY AND CLIENT—DISBARMENT PROCEEDINGS—POWERS OF EX-
AMINERS—STATUTES—ELIMINATING INVALID PORTION. Laws 1917, p.
421, giving the state board of law examiners power to examine ap-
plicants for admission to the bar, and to investigate the conduct of
attorneys, initiate complaints and hear disbarment proceedings, sub-
ject to review by the courts, though unconstitutional in so far as
it authorizes them to enter judgment of disbarment, is sustainable
as to the delegated legislative and administrative functions, and
authorizes the board to pass upon the evidence received, and report
the same to the supreme court; since the valid is separable from the
invalid portions of the act.

[1]Reported in 172 Pac. 1152.

COURTS—SUPREME COURT—ATTORNEYS—DISBARMENT. The supreme court having been vested with the exclusive power to admit and enroll attorneys, and having inherent power to disbar them, the legislature could by Laws 1917, p. 421, vest it with exclusive jurisdiction of disbarment proceedings, upon reports made to it by the state board of law examiners.

CONSTITUTIONAL LAW—DUE PROCESS—ATTORNEYS—RIGHT TO PRACTICE—NOTICE—PROCEEDINGS. Laws 1917, p. 421, providing for the disbarment of attorneys, upon notice and complaints made to and heard by the state board of law examiners, reported to the supreme court, does not violate the constitutional inhibition against the taking of property without due process of law, or any other constitutional provisions, except in so far as it authorizes a final judgment by the state board.

Petition filed in the supreme court December 24, 1917, to review the findings of the state board of law examiners in disbarment proceedings. Affirmed.

*F. M. Roberts* and *R. P. Oldham,* for petitioner.

*The Attorney General* and *Hance H. Cleland* and *Thos. F. Murphine, Assistants,* for respondents.

*Geo. H. Rummens, Fred G. Clarke, Ogden & Clarke, Walter Schaffner, Edward H. Wright, Magill & McKenney, McMasters, Hall & Drowley,* and *N. B. Brooks; amici curiae.*

HOLCOMB, J.—This proceeding was instituted under the Laws of 1917, ch. 115, p. 421. The complaint in disbarment by the chairman of the board of law examiners alleges that Bruen's "conduct of the affairs of said Charlotte Isom constituted unprofessional conduct as an attorney at law and involved moral turpitude to such an extent that his right to practice his profession as an attorney at law in the state of Washington should be revoked." The matter was brought on for hearing before the chairman of the board of law examiners, who heard the testimony at Seattle, Washington, in October, 1917.

After taking the testimony and hearing the argument in the matter, the full board of law examiners made findings to the effect that the charges against the attorney were true, and conclusions to the effect that his right to practice law had been forfeited; that he should be disbarred and his name stricken from the roll of attorneys of this court and of the state of Washington. They thereupon made an order to that effect, which was filed in this court under the provisions of Rule 21 of this court. Within thirty days after the filing of the report and findings, Bruen filed his petition to review the findings of the board of law examiners.

*In limine* he contends that the act of 1917, in so far as it seeks to delegate to the board of law examiners the function of hearing and determining the question of his fitness to continue in the practice of the law, is unconstitutional as an encroachment upon the judicial powers conferred by the constitution upon the courts.

Several briefs and arguments have been filed by *amici curiae,* all of which take the same position as to the constitutionality of the law, except that of Mr. Rummens. The principal propositions advanced to defeat the law are: (1) That it attempts to confer upon the state board of law examiners judicial powers and functions which can only be exercised by the courts provided for in the constitution; (2) that it violates § 6 of art. 4 of the constitution, which provides that the superior court shall have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested in some other court; (3) that it violates the fundamental principles and purposes of the state constitution, and particularly articles 2, 3, and 4 thereof, which provide for the three separate and distinct branches of government, because the act provides that the board shall exercise adminis-

trative, legislative and judicial powers and functions in the same matter or proceeding; (4) that the act violates § 3 of art. 1 of the state constitution and the 14th amendment to the constitution of the United States, in that it deprives persons of their liberty and property without due process of law; (5) that it violates § 12 of art. 1 of the state constitution and the 14th amendment to the United States constitution, in that (a) it constitutes class legislation, (b) abridges privileges and immunities of the citizens of the United States, (c) denies to persons within the jurisdiction of the state of Washington the equal protection of the laws; (6) that it violates § 8 of art. 6 and § 7 of art. 27 of the state constitution, which require that all state officers be elected by the people.

It is apparent that the act was modeled after the legislation providing for the regulation and forfeiture of licenses of physicians and surgeons, which was sustained in *State Board of Medical Examiners v. Jordan,* 92 Wash. 234, 158 Pac. 982, and *State Board of Medical Examiners v. Macy,* 92 Wash. 614, 159 Pac. 801. Similar legislation regulating certain professions has been sustained in regard to dentists *(State v. Brown,* 37 Wash. 97, 79 Pac. 635, 107 Am. St. 798, 68 L. R. A. 889), and school teachers *(Van Dyke v. School District,* 43 Wash. 235, 86 Pac. 402). We have held in *In re Lambuth,* 18 Wash. 478, 51 Pac. 1071, that the power to strike from the rolls an attorney is inherent in the court itself; that no statute or rule is necessary to authorize punishment in proper cases; that statutes and rules may regulate the power but they do not create it; that this power is necessary for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients; that attorneys may forfeit their professional franchise by abusing it, and

the power to exact the forfeiture is lodged in the courts which have authority to admit attorneys to practice; that such power is indispensable to protect the court, the administration of justice, and that attorneys themselves are vitally concerned in preventing the vocation from being sullied by the conduct of unworthy members.

The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy had been granted or not; the power to promulgate rules for its practice, and the power to provide process where none exists. It is true that the judicial power of this court was created by the constitution, but upon coming into being under the constitution, this court came into being with inherent powers. Among the inherent powers is the power to admit to practice, and necessarily therefrom the power to disbar from practice, attorneys at law. Formerly attorneys were admitted in various courts. The legislature, with a view of bringing about uniformity in the requirements and standards for admission of attorneys, conferred the whole matter of admission of attorneys upon this court, and this court is the only court entitled to admit and enroll attorneys in the state of Washington. The evident purpose of ch. 115, Laws of 1917, p. 421, was to remedy and prevent mischiefs.

"At common law, an attorney was always liable to be dealt with in a summary way for any ill practice attended with fraud or corruption, and committed against the obvious rules of justice and honesty. No complaint, indictment, or information was ever necessary as the foundation of such proceedings. Usually they are commenced by rule to show cause, or by an attachment or summons to answer; but these are issued on motion or bare suggestion to the court, or even on the knowledge which the court may acquire of the doings of an attorney by their own observation. No

formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding. Sometimes they are founded on affidavit of the facts, to which the attorney is summoned to answer; in other cases by an order to show cause why he should not be stricken from the roll; and, when the courts judicially know of the misconduct of an attorney, they will of their own motion order an inquiry to be made by a master without issuing any process whatever, and on the coming in of his report will cause his name to be stricken from the roll." *In re Randall,* 11 Allen (Mass.) 473.

Under the statutes of this state a comprehensive system has been adopted with reference to the admission, suspension, and disbarment of attorneys. The power to admit, so far as the statutes of this state are concerned, is vested in the supreme court. The cases are fairly uniform upon the proposition that admitting to practice, suspending, and disbarring are judicial functions. The legislative power, in the interest of uniformity of standard and to remedy and prevent mischiefs in the profession, may regulate and restrict this power, but cannot take it away. It may provide machinery for the administration of the regulation provided by the legislature, as in carrying into effect such regulations some agency is necessary. In this instance it has provided the machinery and agency of the state board of law examiners. This board has, as urged in several of the arguments before us, been granted powers which partake of the nature of legislative, administrative or executive, and judicial. Certainly it is judicial power that is conferred when it is given the power to hear and determine the right of a person to continue the practice of law, and it not only hears and determines the right of a person to practice law, but it initiates complaints against such persons, which is the function of an administrative officer. These func-

tions, it has been urged, have been combined in the state board of medical examiners, in the state board of dental examiners, and in other such boards, and their powers and functions have been upheld. But those professions and occupations are not filled by persons who are solely and exclusively officers of the court and under the control and regulation of the courts. The boards regulating them are administrative boards with some incidental quasi-judicial powers which cannot be exercised by them finally but are subject to review by the courts, and a review by the courts in those cases must go before a court of original and general jurisdiction; to wit, the superior courts. It is obvious that the board of law examiners has been created a sort of inferior court, inferior only to this court, for a review is provided for from that board to this court only.

These functions being essentially judicial and inherent in the courts, we are of the opinion that the legislature has attempted to create a judicial tribunal which, at the same time, has administrative and delegated legislative powers. Such a system is not warranted under our constitutional form of government. The legislative, executive, and judicial functions have been carefully separated and, notwithstanding the opinions of a certain class of our society to the contrary, the courts have ever been alert and resolute to keep these functions properly separated. To this is assuredly due the steady equilibrium of our triune governmental system. The courts are jealous of their own prerogatives and, at the same time, studiously careful and sedulously determined that neither the executive nor legislative department shall usurp the powers of the other, or of the courts. Now, it is evident that, under our constitution, this board may exercise such delegated legislative powers as have been granted to it, which are the examination of applicants

for admission to the bar and the prescribing of certain rules; and they are competent to exercise the administrative powers conferred upon them of investigating the conduct of attorneys who have been admitted, to ascertain whether or not they should be permitted to continue to practice their profession, in order that the mischiefs sought to be remedied by the legislature may be remedied and prevented, and may initiate complaints in such cases and hear the evidence, and make reports and findings thereon. But the board is not a court and cannot exercise the functions of a court, except the limited function of passing upon evidence received by them and reporting it. They can make no order striking the name of an attorney from the rolls or disbarring him from practice.

The question then arises whether effect can be given to chapter 115 by eliminating the provisions authorizing the board to enter judgment or enter judicial orders or simply have the board make their findings and reports to this court. It is vigorously contended in several of the arguments before us that no court in this state has original and general jurisdiction except the superior court, and that therefore any report or findings made by any such administrative board should be made to the superior court for review and order, and that the legislation before us not so providing, there is no way to proceed to disbar an attorney except by proceeding originally in the superior court.

Much strength is given to this view by the decision of this court in *In re Waugh*, 32 Wash. 50, 72 Pac. 710. In that case, Judge Dunbar, writing for the court, held that the supreme court has no jurisdiction of proceedings for the disbarment of an attorney, either under constitutional authority or by virtue of its inherent powers, although the attorney may have perpetrated a fraud upon the superior court in gaining admission to

practice. The decision was by a divided court, three of the judges signing the prevailing opinion and two of them the dissenting. It has long been held that the court which has power to admit attorneys has also the power to disbar them. That principle was overlooked in the *Waugh* case. If this court has not the power conferred upon it by legislation to pass upon the qualifications for admission to the bar of applicants therefor, and of enrolling them as the only court of the state having such power, a great many attorneys in this state have not been legally admitted to practice. The *Lambuth* case, hereinbefore quoted, in our opinion, held contrary to the decision in the *Waugh* case, and *In re Robinson,* 48 Wash. 153, 92 Pac. 929, 15 L. R. A. (N. S.) 525, also held to the contrary. We are of the opinion that the *Lambuth* and the *Robinson* cases proceeded upon the right principles and are in conflict with the *Waugh* case, and that the *Waugh* case is in conflict with the very great weight of authority. As to the matter of original jurisdiction in such proceedings, we now believe it should be, and it is, overruled.

We are of the opinion that this court, having been exclusively vested with the power of admitting attorneys to practice, may also be exclusively vested with the power of disbarring attorneys from practice. While it is a matter of great importance to the private practitioner, it is also a matter of great public concern. Having the sole and exclusive power in such matter, not prohibited by any constitutional provision, and not infringing in any way upon any legislation of the state except that part of chapter 115 last discussed, the legislature provided an intermediary agency whereby the power of the court could be more generally and efficiently exercised. To that extent the legislation was warranted and valuable. The invalid portion is mani-

festly separable from the valid portions of the act, which may, therefore, be sustained.

There is no merit in the contention that the legislation takes property or property right without due process of law in violation of the state and Federal constitutions. Notice and hearing are provided for, and the final hearing will be speedily had in the court of last resort of the state without any considerable expense to the person accused. This meets every requirement of the constitutions. We hold, therefore, that the act is in all respects constitutional, except the provision for a final order or judgment of disbarment by the board of law examiners. It will be their duty henceforth, upon proceeding against any person accused under the act, to have a hearing and report their findings to this court. No judgment or order shall be made by them, but the matter shall be determined and reviewed by this court in accordance with the rules which we have already adopted: Rules 21, 22, and 23, entered March 27, 1918. Rule 23 will necessarily have to be amended to conform to this decision. The matter is before us to review the report and findings of the investigating board, made after a hearing upon due notice.

As to the facts in this case, we have examined the record and are firmly convinced that the findings and conclusions of the board of law examiners are justified, and that the petitioner has forfeited his right to practice, and his name shall be stricken from the roll of attorneys.

ELLIS, C. J., CHADWICK, MOUNT, PARKER, WEBSTER, and MAIN, JJ., concur.

FULLERTON, J., concurs in the result.