## INVALIDITY OF ACT REINSTATING DISBARRED ATTORNEY.

Circuit Court of Lucas County.

STATE, EX REL, CHARLES A. THATCHER, v. BERNARD F.
BROUGH ET AL.

Decided, June 15, 1912.

*Disbarment—Act Reinstating Disbarred Attorney Unconstitutional—
Order of Disbarment by Supreme Court under Asserted Powers
Operative in all Courts—Prejudice of Judges in Entering Order of
Disbarment Not Presumed, When—Mandamus.*

1. The act (102 O. L., 84), reinstating a disbarred attorney is uncon-
stitutional in that (1) it is a usurpation of judicial power, and (2)
it is special legislation in a matter of a general nature as to which
uniform operation is required.

2. An order of disbarment of an attorney at law, made by the Su-
preme Court under its asserted powers, rather than by virtue of
statutory powers conferred, applies to all courts of the state, the
intention that it shall so operate being indicated by the provision
that the name of the defendant attorney be "stricken from the
roll of attorneys of the state," and there is but one such roll.

3. Prejudice, disqualifying judges of the Supreme Court to hear and
determine disbarment proceedings, will not be assumed from the
facts that the disbarred attorney had previously published circu-
lars attacking other candidates for judicial office and also re-
flecting upon members of the Supreme Court as candidates for re-
election, since no pecuniary or other interest in the proceeding is
shown.

Mandamus; action brought by Charles A. Thatcher, relator,
against Bernard F. Brough, John P. Manton, Charles E. Chit-
tenden and Curtis T. Johnson, Judges of the Court of Common
Pleas of Lucas County.

*Charles A. Thatcher* and *G. B. Keppel,* for relator.
Respondents in person.

WILDMAN, J.; KINKEAD, J., and RICHARDS, J., concur.

This is a proceeding for mandamus under the statute, and
one of such importance to the courts, the bar and the people
of the state as to have enlisted our most earnest attention.  The

case involves the right of the relator as an attorney at law to practice in the courts of this state.

The claims of Mr. Thatcher to recognition as such attorney have been made the subject of wide discussion by the press of the state, and of special legislation by the General Assembly. The matter involves not only his personal interests, but the rights and interests of litigants in courts, and proper definitions of the powers and jurisdictions of the judicial and legislative branches of our state government.

The prominent facts constituting the history of his case in both these branches have become, by wide publication and discussion, familiar history, and, except in outline, need not be repeated. They are briefly, his original admission to the bar some years ago by the Supreme Court of Ohio, his disbarment for alleged immoral conduct by judgment of the same court, June 25, 1909, *In re Thatcher*, 80 Ohio St., 492; the refusal December 20, 1910, to reinstate him, *In re Thatcher*, 83 Ohio St., 246; his disbarment by a federal court on the same and additional grounds, *In re Thatcher*, 190 Fed. Rep., 969; the special act of the General Assembly of April 18, 1911 (102 O. L., 104), for his readmission to the bar; his attempt to practice in the Court of Common Pleas of Lucas County and the refusal of that court to permit him so to do, *In re Thatcher*, 12 N.P. (N.S.), 273; holding the special act of the Legislature to be a usurpation of judicial power and for that reason invalid.

The present proceeding before us seeks a peremptory writ of mandamus, compelling the common pleas court to permit him to practice therein. He asserts a right based on his original admission to the bar, the claimed invalidity of the Supreme Court's judgments for lack of jurisdiction and disqualification of two of its members, and, if these claims prove untenable, the special act of the Legislature for his readmission.

These claims invite no inquiry into the merits of the charges on which the Supreme Court acted and we will attempt none; but to remove, so far as we may, any possible false impression as to the grounds of the Supreme Court's action, quotations from the syllabus of its original opinion, *In re Thatcher, supra,* and

from that rendered on the motion for reinstatement, *In re Thatcher, supra,* may not be inappropriate here. Neither the general public, the legislative body, nor any judicial tribunal can intelligently review the findings of fact of that court without a consideration of all the evidence on which it acted.

Paragraphs 3, 4 and 6 of the syllabus in the original case and paragraph 3 of that on the motion to reinstate are as follows:

"An elector who is an attorney has the right to criticise the judgments and conduct of judges in a decent and respectful manner; but no man has a right to degrade and intimidate a public officer and bring his office into contempt by the publication of libelous matter at any time, and the fact that such officer is a candidate for re-election will not excuse such conduct. One who claims the protection of the Constitution, Article I, Section 11, must also and at all times be held responsible for abuse of the privilege.

"The real question in cases of this kind is whether under the facts admitted and proved the respondent appears to be a fit person to be longer allowed the privilege of an attorney; whether he has shown himself, by lack of appreciation of ethical standards and by unworthy conduct, to be no longer worthy of being recognized as an officer of the courts.

"While the power of disbarment should be exercised with great caution, yet where the respondent has been found guilty of unprofessional conduct involving moral turpitude and of misconduct affecting his character and standing as an attorney, and especially where he has manifested no signs of regret and retracted nothing, the courts will not hesitate, through sympathy for the individual, to protect themselves from scandal and contempt and the public from prejudice, by striking such person from the roll of attorneys.

"This court has found the respondent guilty of a specification which in substance was that, for the purpose of procuring for himself a large sum of money, disproportionate to legitimate fees for services as an attorney, he caused suit to be brought on notes which had been paid and which he knew had been paid; and procured a reputable attorney who did not know that said notes had been satisfied to bring the action thereon and verify the petition, and such finding by the court establishes the charge that he was guilty of unprofessional conduct involving moral turpitude."

There is no rule better established than that the remedy of mandamus will be afforded only where the right to it is clear. It was embodied in the first paragraph of the syllabus of *State* v. *Yeatman*, 22 Ohio St., 546, as follows:

"A mandamus will not be awarded in the absence of a clear right, in the party seeking the writ, to the object sought to be obtained by it."

See, also, General Code, 12283, 12285, 12288.

Has the relator in the present proceeding shown such clear right to the remedy which he prays?

The situation produced by the claim of relator that the judgment of disbarment pronounced by the Supreme Court is of no validity, is, when addressed to a court of subordinate power, a very peculiar one. While it may be true that if the court of last resort acted beyond its jurisdiction, or if for any other reason its judgment lacks validity, a lower court in a collateral proceeding may disregard it; still, the problem presented to us is a perplexing one. The relator's claim in this respect is a double one: First, that the constitutional jurisdiction of the Supreme Court does not embrace proceedings to disbar attorneys, and second, that two of the judges of that court who sat in the case, and one of whom pronounced the opinion adverse to the relator upon the motion for his reinstatement as attorney, were disqualified from sitting.

As to the first of these two contentions, we are relieved from the difficulty by the conclusion which, after a reading of the authorities cited, we have unanimously reached, that the jurisdiction of the Supreme Court, under the powers derived by it through the Constitution and by common law, was entirely adequate to justify the procedure. In this connection attention is invited to the adjudications cited in the opinions of the three judges of the court of common pleas who concurred in reaching a conclusion that the relator was not entitled to practice in their court.

The other claim, that the judgment of disbarment is invalid because two of the judges were disqualified, is, we think,

untenable.  The claim is not that either of the two judges mentioned had any pecuniary or other direct interest in the proceeding, but only that certain conduct of relator under consideration as a ground for disbarment, to-wit, the publication of an alleged libelous circular or circulars attacking other persons, also reflected upon the two judges of the Supreme Court, and that they may have been thereby prejudiced against him.  We can not assume that by such an attack, they were so biased or prejudiced against the relator as to affect their judgments, and even if such bias did appear, we have been presented with no authorities indicating that in the absence of a challenge to the right of such judges to sit, they would be disqualified.

Another question incident to this disbarment proceeding is one of greater difficulty and one which has not elicited a united opinion from the common pleas judges.  I refer to that as to the scope of the judgment of disbarment.  It is contended by relator and held by Judge Johnson, one of the common pleas judges, *In re Thatcher,* 12 N.P.(N.S.), 273, that the jurisdiction of the Supreme Court to disbar did not extend so far as to affect the right of relator to practice in the court of common pleas.  The argument is that if the Supreme Court derived no jurisdictional power from the General Assembly by virtue of Revised Statutes, 563 (General Code, 1707) but acted by virtue of its constitutional power, independent of the Legislature, that power was one possessed independently by every court for its own protection and suitors invoking its jurisdiction; that if the Supreme Court could determine who should and who should not practice before it, the court of common pleas had like power within its own jurisdiction.

We have examined with care such adjudications as we have found touching this question, and are convinced that the three common pleas judges, Manton, Brough and Chittenden, adopting the other view, were correct.  Among these authorities are several referred to approvingly by the Supreme Court in the disbarment case.  The ones so cited are:

*In re Breen,* 30 Nev., 164, a proceeding to disbar an attorney in which the Supreme Court of that state, while asserting its

right to disbar, independent of statute, expressly ordered that the name of the attorney disbarred by its decree should be struck from the roll of attorneys and that he should be disbarred from "thereafter appearing or practicing in any of the courts" of that state.

*In re Simpson,* 9 N. Dak., 379; *Nelson* v. *Commonwealth,* 128 Ky., 779; *Brooks* v. *Fleming,* 65 Tenn., 331, 338; *In re Robinson,* 48 Wash., 153.

In all these cases the orders of suspension or disbarment, though based, as in the Ohio case, on asserted powers not statutory, were made or held to apply to all the courts of the states where such judgments were rendered.

That our own Supreme Court intended to disbar relator from practicing in the lower courts of the state, we think is clearly indicated in the language of the opinion, and in that of the journal entry ordering that his name be "stricken from the roll of attorneys in the state." There is but one such roll, and under the procedure as regulated by statute an attorney admitted to practice by the Supreme Court, is, by virtue of that admission and without further order by the lower courts, entitled to practice therein. In the disbarment case, *In re Thatcher,* 80 Ohio St., 492, the Supreme Court not only in the first paragraph of the syllabus, but on page 655 of the opinion, clearly connects the right to disbar with the right to admit, evidently deeming the effect of the exercise of one power as broad as the other.

Having arrived at this conclusion with reference to the jurisdiction of the Supreme Court and the power and scope of its judgment, we reach the interesting and important question as to whether or not the disability of relator to practice in the courts of the state has been removed by the attempted legislation in his favor, the act of 1911.

The judges of the common pleas court, with the exception of Judge Johnson, united in their holding that the special act attempting to admit relator to practice in the courts of the state was invalid. The judgment of the court of common pleas, as shown by the opinion of the three judges, was based on their

view, supported by numerous citations of authorities, that the power to admit attorneys to practice in the courts is exclusively a judicial power and not legislative. I will not attempt to review these opinions or the authorities cited. We have read them and many other cases bearing on the subject and are satisfied that the great weight of authority sustains the conclusion at which the three judges arrived. Before leaving this branch of our inquiry, it should be stated that the language in the opinion rendered in the disbarment case clearly indicates the view, we think, that a statute such as the one relied upon by Mr. Thatcher for his reinstatement to the bar, would be deemed and held an encroachment upon the judicial power belonging exclusively to the courts. See especially pages 654 and 655 of the opinion.

It may be said also before leaving this question of legislative as distinct from judicial power, that the special act in question is, so far as the search of counsel or that instituted by ourselves has discovered, the first attempt by any legislative body in this or any other state to admit an individual directly to the practice of law in the courts. Some requirements of eligibility to admission have been enacted, but for more than a century the final admission has been left in Ohio as in other states to the courts themselves.

Upon a ground additional to that adopted by the three common pleas judges in support of their holding that the special act is invalid, we have arrived at the same result. The statute is clearly, in our judgment, an attempt to restrict the uniform operation of legislation of a general nature, and it thereby violates Article II, Section 26, of the Constitution.

For many years prior to 1851, when our present Constitution was adopted, in the compilations of statutes in Ohio, acts relating to the admission and disbarment of attorneys were published in the volumes of session laws under the title "Acts of a General Nature." That the framers of the Constitution were familiar with this arrangement and phrase, is apparent from their use of the same words in the section referred to. All such acts they intended to have a uniform operation. That

these facts furnished one just rule of constitutional interpretation is expressly held by the Supreme Court in *State* v. *Bargus*, 53 Ohio St., 94, 107.

If, in the general act as to judicial proceedings for disbarment, it had been provided that all attorneys in the state, except Mr. Thatcher, should be subject to its provisions, its unconstitutionality would hardly be questioned, and it would seem no more within the legislative power to except relator by a special act from the operation of a general one. Whatever the form of legislation it should not violate the manifest spirit and purpose of the constitutional inhibition.

That acts of a general nature must operate uniformly is a rule applicable to classes of persons as well as to territorial subdivisions of the state. As stated in the opinion of Judge Spear, in *Senior* v. *Ratterman*, 44 Ohio St., 678:

"The principle of uniform operation requires simply that the law shall bear equally in its burdens upon the persons standing in the same category. * * * It must have a uniform operation upon all those included within the class upon which it purports to operate."

Numerous authorities in support of this proposition might be cited. The rule is in harmony with the prohibition in the federal constitution forbidding states "to deny any person within their jurisdiction the equal protection of the laws," and our Ohio Bill of Rights prohibits the granting of privileges to one which are denied to others of the same class, and the imposition of restrictions or burdens upon certain citizens from which others of the same class are exempt. See *State* v. *Gardner*, 58 Ohio St., 610.

It is urged by relator that the enactment in question was based, as it recites, upon an existing "emergency" and that by reason of this fact it was taken out of the constitutional prohibition. While the force of this claim is not distinctly rebutted by an express holding of the Supreme Court, it is forcibly said in *Platt* v. *Craig*, 66 Ohio St., 79, that "the local and temporary emergency must be a real exigency, and not a mere pretext for special legislation," and it is forcibly urged by Judge

Burkett in *State* v. *Spellmire,* 67 Ohio St., 90, that "there is no provision for violating the Constitution in an emergency."

The history of the adjudications and legislation relating to Mr. Thatcher's status has become so familiar that we feel at liberty to infer that the "emergency" mentioned in the statute signified merely his disability from practicing as an attorney by reason of the judgment of disbarment. The act, besides reciting facts as to his legal eligibility to practice, says also that Thatcher "is of a good moral character." It is urged by relatir that this recital is not inconsistent with the finding of the Supreme Court that he was of such character at the time of the disbarment as to render him unfit to be a member of the bar, and that the statute is neither inconsistent with the judgment of disbarment nor an attempt to evade or reverse it. He urges that if the finding of the court was justified, there was time between the date of the judgment and that of the passage of the act, for reformation; but in the case of *In re King,* 54 Ohio St., 415, it was held that a court rendering judgment of disbarment retains jurisdiction with power to reinstate the disbarred attorney "on a proper showing of reformation, or for other satisfactory reasons, arising after the disbarment." The opinion of the case cited is by the full court, which in addition to what has already been stated, holds:

"When a member of the bar of the state has been, upon proper proceedings, disbarred, and the judgment remains in full force and unreversed, the only remedy of the party is, at the proper time and on a proper showing, to apply to the court in which he was disbarred to be reinstated."

Can it be said that the jurisdiction of the Supreme Court can be arrested in Mr. Thatcher's case, and that the recitals of the special act are to be taken as evidence or proof of the existence of the facts stated? That they can have no such effect is asserted in substance by Cooley, Const. Lim. (6th Ed.), pp. 113, 115.

In effect, this attempted legislation is in our judgment, as already indicated, an attempt to reverse an adjudication of the Supreme Court of the state rendered in the exercise of its independent power.

"The power to open or vacate judgments is essentially judicial. Therefore, on the great constitutional principle of the separation of the powers and functions of the three departments of government, it can not be exercised by the Legislature." *1 Black, Judgments,* Section 298.

I quote also to the same purport the language of the opinion in *Bartlett* v. *State,* 73 Ohio St., 58:

"It is well settled that the Legislature can not annul, reverse or modify a judgment of a court already rendered, nor require the courts to treat as valid laws those which are unconstitutional. If this could be permitted the whole power of the government would at once become absorbed and taken into itself by the Legislature."

In these days of sharp criticism of courts for assumed interference with the legislative province, we can not too often remind ourselves of the principles defining the respective functions and powers of the co-ordinate branches of the government. Many well meaning but not always well informed critics have, of late, questioned the power of courts to pass upon the constitutionality of legislative enactments. It is altogether probable that some judges have too readily declared statutes to be invalid because of a vague belief that they were hostile to the general spirit of the Constitution; but while every court appreciating both the scope and limitations of its own duties and powers will approach with reluctance and caution any question as to the validity of an act of a legislative body, no judge can, when an issue is fairly presented properly refuse to hold invalid a statute which clearly violates the fundamental law ordained by the people. So to refuse and to uphold the statute would be to hold that the Legislature is mightier than the people, and the statute enacted by the Legislature more potent than the written Constitution.

In this connection and in closing, the words of Chief Justice Marshall, of the United States Supreme Court, in *Marbury* v. *Madison,* 5 U. S. (1 Cranch.), 137, written many years ago, as we were entering on our new experiment of a republic with a written constitution, may not unfitly be quoted:

"The powers of the Legislature are defined and limited; and that those limits may not be mistaken, or forgotten, the Constitution is written. To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation. It is a proposition too plain to be contested, that the Constitution controls any legislative act repugnant to it; or, that the Legislature may alter the Constitution by an ordinary act. Between these alternatives there is no middle ground. The Constitution is either a superior paramount law, unchangeable by ordinary means, or it is on a level with ordinary legislative acts, and, like other acts, is alterable when the Legislature shall please to alter it. If the former part of the alternative be true; then a legislative act contrary to the Constitution is not law; if the latter part be true, then written constitutions are absurd attempts, on the part of the people, to limit a power in its own nature illimitable. Certainly all those who have framed written constitutions contemplate them as following the fundamental and paramount law of the nation, and, consequently, the theory of every·such government must be, that an act of the Legislature, repugnant to the Constitution, is void. This theory is essentially attached to a written Constitution, and, is consequently, to be considered, by this court, as one of the fundamental principles of our society. It is not therefore to be lost sight of in the further consideration of this subject.

"If an act of the Legislature, repugnant to the Constitution, is void, does it, notwithstanding its invalidity, bind the courts, and oblige them to give it effect? Or, in other words, though it be not law, does it constitute a rule as operative as if it was a law? This would be to overthrow in fact what was established in theory; and would seem, at first view, an absurdity too gross to be insisted on. It shall, however, receive a more attentive consideration. It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each. So if a law be in opposition to the Constitution; if both the law and the Constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregard-

ing.the law, the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty. If, then, the courts are to regard the Constitution; and the Constitution is superior to any ordinary act of the Legislature, the Constitution, and not such ordinary act, must govern the case to which they both apply. Those, then, who controvert the principle that the Constitution is to be construed, in court, as a paramount law, are reduced to the necessity of maintaining that courts must close their eyes, on the Constitution, and see only the law.

"This doctrine would subvert the very foundation of all written constitutions. It would declare that an act which, according to the principles and theory of our government, is entirely void, is yet, in practice, completely obligatory. It would declare that if the Legislature shall do what is expressly forbidden, such act, notwithstanding the express prohibition, is in reality effectual. It would be giving to the Legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure. That it thus reduces to nothing what we have deemed the greatest improvement on political institutions, a written Constitution, would of itself be sufficient, in America, where written constitutions have been viewed with so much reverence, for rejecting the construction."

Our unanimous conclusion, based, we believe, on both wise and just principles and the weight of judicial authority, requires us to refuse the relator the writ which he asks. If he has just grounds for reinstatement to the bar, he should present them to the court which struck his name from the roll, the court of last resort in the state. We can not assume that that court will not do him justice.

·KINKADE, J.

I concur in the conclusions reached that the judgment of the Supreme Court bars Mr. Thatcher from practicing in all the state courts of Ohio and that the act of the Legislature of April 18, 1911, is unconstitutional for the reason that it is the exercise of judicial power which is, by the Constitution, vested in the courts and not in the Legislature and for the further reason

that it is special legislation of a character prohibited by the Constitution. The writ of mandamus applied for here should not be issued.